### 13938.   VERDERY *v.* WITHERS.

A contract will not be held void for uncertainty unless under all the circumstances the intention of the parties can not be fairly collected and effectuated.

The contract in question was not void for indefiniteness of description of the plaintiff's "Burke county lands."

The correspondence by which the contract was made shows that neither of the parties knew the exact boundaries or the number of acres of the

plaintiff's lands, and that the plaintiff agreed to sell and the defendant to buy all of the plaintiff's Burke county lands, provided the plaintiff's title thereto was good and that a plat and survey, showing the exact number of acres and their location and boundaries, be made. This was done, and thereupon the agreement between the parties became a binding contract. The fact that the survey showed that a parcel of land containing 89 acres did not belong to the plaintiff was not legally sufficient to authorize a repudiation of the contract by the defendant to buy all of the plaintiff's Burke county lands, aggregating approximately 1572 acres.

The correct measure of damages was set forth in the petition; and the other allegations specially demurred to were relevant for the purpose of throwing light upon the motive of the defendant in repudiating the alleged contract,— whether his objection to the plat was an honest one or was merely a subterfuge to enable him to escape from a bad trade.

The petition as amended sets out a cause of action, and the court did not err in overruling the demurrers. (LUKE, J., dissents.)

DECIDED MARCH 8, 1923.

Action for breach of contract; from city court of Richmond county — Judge Black. August 16, 1922.

This is an action by Charles A. Withers against James P. Verdery, for damages on account of the alleged breach of a contract by the defendant to purchase from the plaintiff a certain tract of land. The petition as amended sets out substantially the following facts: The plaintiff was a resident of Cincinnati, Ohio, and the defendant a resident of Augusta, Georgia, and the alleged contract, which was for the purchase and sale of the plaintiff's "Burke county lands," was made by letters and telegrams. On June 4, 1920, the defendant wrote to the plaintiff as follows: "I have recently returned from making a visit to your lands in Burke county. I find that some of it is very good and some very poor. I have advertised it for sale in the Augusta Chronicle, and am hopeful of getting your price of $10 per acre for the whole of it, but may have some difficulty in getting all cash. Will do the best I can and will let you know the result." Three days later the defendant again wrote to the plaintiff: "Since writing you last week I hear that another party is authorized to sell your Burke county lands. Now, if you wish me to sell them, will ask that you give me a sixty days' option, as I [am] quite sure that I can get your price of $10 per acre for all of it, net to you, with not less than $5,000 cash and balance in 12 and 18 months with interest at 7% per annum. If this is agreeable to you, kindly sign the enclosed

option, and send me by return mail." To this letter the plaintiff, through his agent, replied as follows: " We are writing for Major Withers, who wishes to apologize for not writing personally. He does not do so because of defective eyesight and the infirmities of age. We are enclosing an option on the property, to expire on August 15, 1920, and trust that this will enable you to make the sale." This option was in the following words: " In consideration of one dollar I hereby give to J. P. Verdery an option for sale of my Burke county lands at $10 per acre for all of it net to me, with not less than $5,740 cash and balance in 12 and 18 months with interest at 7% per annum. This option to expire on August 15, 1920." Subsequently, on June 24, 1920, the defendant wrote to the plaintiff: " I find it essential to have the plat or plats of your Burke county lands in order to locate them. If you have them, kindly send them to me by registered mail. I will take good care of them and return when I have finished with them." In reply to this letter the plaintiff, through his agent, wrote to the defendant as follows: " Major Withers was just in with your letter. The old gentleman is rather badly crippled up and I have to do his writing. He tells me that the fire which burned up their home years ago destroyed everything they had. The only thing he has to show his ownership of the plantations is the deed of the administrator of the estate. However, he says that the plats must be in the records at Waynesboro, Georgia. Will you see what you can do there?" The petition alleges that at this stage of the correspondence between the parties the defendant, who was acting as broker for the plaintiff, found a prospective purchaser in the person of George Gordon, who agreed to purchase the plaintiff's Burke county lands at $15 per acre, and that, without disclosing this fact to the plaintiff, the defendant, on July 1, 1920, wired to the plaintiff as follows: " Thinking about buying your Burke [county] lands myself to net you ten dollars per acre if you are willing to divide whatever rents are collected for this year. If you will do this will wire you on receipt of your telegram whether or not I will close trade with you. If I buy will pay you five thousand seven hundred and forty dollars as soon as title is examined [by] my attorney and found satisfactory. Balance to be paid in twelve and eighteen months with interest at seven per cent. Wire me immediately." The plaintiff immediately, on July 1, 1920,

in reply to this telegram, telegraphed to the defendant: "Will sell on terms you state and divide whatever rents are collected. Am writing to-day." And on the same day the plaintiff wrote to the defendant as follows: "Thank you for your telegram of July 1. I am willing to sell you the property on the basis you state, viz., to net me $10 per acre. I do not know what is being grown on the estate this year, but will divide any collections I make on any basis satisfactory to you. It is understood, if you trade, you are to pay me $5,740 in cash, and the balance in twelve and eighteen months, with interest at the rate of 7%. I am enclosing copy of my deed, and you should be able to find plats with all particulars on record. It would probably be well to look at the records of Burke county at Waynesboro. I trust the deal will go through and prove to advantage to you." The deed referred to in this letter, and attached to the petition as an exhibit, described the petitioner's Burke county lands as follows:

"All that tract of swamp land, situated in Burke county, Georgia, containing two hundred and seven (207) acres, more or less, and being that part of the swamp portion of the Burke county plantation of William M. D'Antignac, late of said Richmond county, deceased, awarded to said Clara Lou Withers in the division of said plantation among the legatees of said William M. D'Antignac and known as the Withers Swamp Place.

"Also all that tract of swamp land, situated in said Burke county, containing two hundred and seven (207) acres, more or less, and being that part of the swamp portion of said plantation awarded in said division to Sophia D'Antignac, afterwards Sophia Carwile, and conveyed to said Clara Lou Withers by Zachariah W. Carwile, the husband and sole heir-at-law of said Sophia D'Antignac, by deed duly recorded in the clerk's office of said Burke county, and being known as the Carwile Swamp Place.

"Also all that tract of upland, situate in said Burke county, containing five hundred and sixty (560) acres, more or less, and being known as the Withers Upland Place, and being that part of the upland portion of said plantation awarded to said Clara Lou Withers in said division.

"Also all that tract of upland, situate in said Burke county, containing six hundred (600) acres, more or less, and known as the Carwile Upland Place, and being that portion of the upland

part of said plantation awarded in said division to said Sophia D'Antignac, and subsequently conveyed to said Clara Lou Withers by the said Zachariah W. Carwile by the deeds above mentioned."

In reply to the plaintiff's telegram and letter of July 1, 1920, the defendant sent the following telegram, dated July 2, 1920: " For the present decided not to buy your Burke county lands, some cloud on title just disclosed. Will write." And the defendant did write, on July 5, 1920, as follows: " Yours of the 1st inst. with copy deed to your Burke county lands is received. I wired you on the 2d inst., and now write you in compliance with my telegram. It appears that a contract for cutting the timber on some of this land may still be in force, and if so would like to know it. Then again it will be necessary to have a survey of this land and a plat made, *so as to show the boundaries and correct acreage* (italics ours), as Mr. William D'Antignac, adm'r, says, so I am informed, that the acreage mentioned in the deed to you was simply an estimate of about what the acreage should be. I have been unable to find any plat recorded or not recorded to this property, and a survey and plat would be necessary before any one would purchase it. I am also informed that young Auvergne D'Antignac will claim an interest in this property. It may be you can enlighten me on this point." In answer to this letter the plaintiff wrote to the defendant, on July 10, 1920, as follows: " Thank you for your letter of July 5th. You speak of a contract for timber on the Burke county land. It was a twenty-year contract, but I have no papers in my possession regarding it. If it has not already expired it will run out very shortly. Mr. W. K. Miller, attorney, in Augusta, was the attorney who represented Mrs. Withers, and he would probably be able to tell you all about this. Will you please see him? As to the survey, all of the papers Mrs. Withers had were burned in the great Augusta fire. The best thing to do is to have a survey made at once; and for this I am willing to pay. Auvergne D'Antignac has no title or interest in the property whatsoever. He has neither a legal nor a moral claim. I think I have covered every point you make in your letter, and I trust that we can clear up everything and make it to your advantage to take the property." Failing to receive a reply to this letter, the plaintiff wrote to the defendant, on July 26, 1920, requesting an answer, and on July 31, 1920, received the

following telegram from defendant: " Title satisfactory. Soon as survey completed about August 20th and is *all right* will remit cash payment and notes as agreed on." (Italics ours.) In acknowledgement of this telegram the plaintiff wrote to the defendant as follows: " Your telegram of July 31st has been received. As I understand it, the survey will be completed about August 20th. In regard to the present crop, the proceeds of which you so kindly divide with me, I wish to advise that I have never known how many acres were planted by each tenant, and I wrote an agreement to be signed by each to pay as rental two bales of lint cotton of not less than 500 pounds each per plow. Last year John Smallwood, a tenant on the Carwile place, sent me two bales, but one of them was linters, worth 12 cents under the market price. Brown sent one bale, but it was short weight, being only 396 pounds. Gabe Bonnar sent one bale, Martha Scott one bale, Cicero Scott one bale, and each of these bales was short weight. I have no means of knowing if the tenants ever signed the agreements. They did not come back to me and were not enforced. This is all for your information in connection with this year's crop."

After quoting the above letter the petition alleges: that the defendant procured the court of ordinary of Burke county to appoint processioners, with the view of having them make a correct plat of the petitioner's lands, and that on November 12, 1920, the processioners filed their return, together with a plat of the land made by the county suveyor; that during the time which intervened between the date when the defendant agreed to purchase plaintiff's lands and the date of the processioners' return, farming conditions in Burke county, Georgia, and neighboring counties, and sections, experienced a great change, the price of cotton declining from the highest known point in recent years to one third or one fourth of former prices; and that boll weevil conditions and general financial conditions throughout the country operated to effect an extraordinary reduction in the market value of plaintiff's Burke county lands; that plaintiff is advised and believes that during the last part of October, 1920, or the early part of November, 1920 (the exact date being unknown to petitioner), George Gordon, the person whom the defendant, when acting as broker for plaintiff, had procured to purchase the lands in question, declined and refused to complete the purchase of the lands, although

he had signed an agreement with the defendant so to do; and that, as a result of Gordon's refusal to purchase, the defendant, on November 8, 1920, wrote to the plaintiff as follows: " I enclose herein copy of plat of the survey of your Burke county lands. From what I hear of this survey, an injustice has been done you. I learn that the tract of land heretofore rented to John Smallwood was entirely excluded from your tract and another piece of land of about the same acreage given you in lieu thereof. Of course, you have your remedy, and that is to object to the survey by filing your objections in the court of ordinary of Burke county, to which court the processioners under the law make their return. I write you promptly, as you have only 30 days in which to file your objections from the date the processioners made their return. If this land was mine, I certainly would employ some competent lawyer to represent me in having the wrong righted. I was inclined to buy your land, but now that litigation is about to ensue, I give up the intention of buying. Enclosed find bills for expense of survey, amounting to $240.50, for which please send me check, and I will receipt you in full." In reply to this letter the plaintiff, on November 13, 1920, wrote to the defendant: " I have your letter of November 8, which surprised me, as in writing you had purchased my property, and I have withdrawn it from the market and considered the sale closed. I have referred your objections to the court of ordinary at Waynesboro."

Failing to hear again from the defendant, it is alleged, the petitioner repeatedly demanded of him that he complete his purchase, and, although he was under no obligation so to do, he (petitioner) offered to make any reasonable reduction in the purchase-price of the lands in question because the survey and plat showed that the tract of land rented to John Smallwood was not owned by him (petitioner), and offered to buy this land so that the defendant would get it as part of the plaintiff's Burke county lands, but the defendant declined absolutely to accept these offers, and refused to purchase the lands under any conditions. It is alleged that thereafter the petitioner made diligent effort to resell his lands at the best possible price, and that on February 21, 1921, through his attorney at law, he notified the defendant that the best offer obtainable for the property was $10,500, less broker's commissions of $500, which sum of $10,500 represented the true

market value of the property at that time and on November 8, 1920, the date of the letter written to the plaintiff by the defendant, refusing to purchase the property; and that, because of the defendant's refusal to purchase the land according to his agreement, petitioner was damaged in the sum of $5,179.72, the difference between the contract price (less one half the rents for the year 1920), to wit, $15,679.72, and the market value at the time of the alleged breach of the contract, to wit, $10,500.

The defendant demurred both generally and specially to the petition as amended, the demurrers were overruled, and to this judgment the defendant excepted.

*Cumming & Harper, Callaway & Howard,* for plaintiff in error.
*Alexander & Lee,* contra.

BROYLES, C. J. (After stating the foregoing facts.) In support of the general demurrer the able and learned counsel for the plaintiff in error make two main arguments: first, that the alleged contract was void because of the indefiniteness of the description of the plaintiff's lands; and second, that a proper construction of the correspondence between the parties shows conclusively that the defendant was not bound to buy the property unless a plat was submitted that was satisfactory to him, and that no such plat was furnished. We will discuss these contentions in the order named.

The law does not favor the destruction of contracts on the ground of uncertainty, and a contract will not be declared void on that ground unless, under all the circumstances, the intentions of the parties cannot be fairly collected and effectuated. *Leffler Co.* v. *Dickerson,* 1 *Ga. App.* 63 (1) (57 S. E. 911). With this general rule in mind, and applying the rulings made in the cases hereinafter quoted from, which are only a few of the numerous decisions dealing with the sufficiency of the description of the subject-matter of contracts, we think that the description of the property in the instant case was sufficient to support the contract of sale. The correspondence between the parties shows clearly that the subject-matter of the contract was *all* of the plaintiff's Burke county lands; and, in the course of negotiations between the parties, the administrator's deed, under which the plaintiff held title, was referred to for a description of the property. This deed, a copy of which was attached to the petition, specifies and describes the several constitutent parts of the plaintiff's Burke

county lands by name, the number of acres in each part, and whether it was swamp land or upland. In the case of *McAfee* v. *Arline,* 83 *Ga.* 645 (10 S. E. 441), it was held: "Where the description is uncertain, reference may be made to prior deeds conveying the same land; and an entire tract of land may be described by a general name by which it is known." In *Flannery* v. *Hightower,* 97 *Ga.* 592, 608 (25 S. E. 376), the court said: "If the intention of the devise be to convey all of the property of the testator, such general description will suffice, and extrinsic evidence is admissible to show such property as was in the testator and such as was necessarily included in the general term employed by him in devising it. At last, the question of description is one of degree only, and if the conveyance be of an entire estate, parol evidence is admissible to ascertain the geographical extent and limit of the property covered thereby." In the case of *Allen* v. *Lindsey,* 139 *Ga.* 648 (77 S. E. 1054), a deed containing the following description was held not to be void because of uncertainty: "the following tract or parcel of land, to wit, 245 acres lying and being in the county of Butts, known as the place whereon the said C. A. Lindsey now resides." And in *King* v. *Brice,* 145 *Ga.* 65 (88 S. E. 960), the Supreme Court said: "The description of land in a contract of sale is sufficiently definite where the premises are so described as to indicate the grantor's intention to sell a particular lot of land. Where the contract indicates that a particular tract is intended to be conveyed, its practical identification can be proved by extrinsic evidence." See also, in this connection, *Barnes* v. *Cowan,* 147 *Ga.* 478 (94 S. E. 564); *Boyd* v. *Sanders,* 148 *Ga.* 839 (98 S. E. 490); *Dean* v. *Turner,* 151 *Ga.* 44 (105 S. E. 602). It follows that the subject-matter of the contract under consideration was sufficiently definite to withstand a general demurrer.

We now come to the real and important question in the case, to wit, whether or not a proper construction of the correspondence between the parties shows conclusively that the defendant was not bound to take the property until a plat was submitted that he accepted as "all right?" It is an elementary rule of law that in construing a contract the courts seek to ascertain the intention of the parties; and if that intention be clear, and violates no rule of law, and sufficient words be used to arrive at the intention, it

shall be enforced irrespective of all technical or arbitrary rules of construction. Civil Code (1910), § 4266. It was long ago settled, that in the making of contracts secret intent was immaterial, only overt acts being considered in determining whether or not the parties to an agreement had agreed to the same thing in the same sense. In dealing with this subject Mr. Williston, in his work on Contracts, § 22, p. 26, quotes the following odd expression: " It is trite learning that the thought of man is not triable, for the devil himself knows not the thought of man." In the instant case the facts set forth in the petition show that the parties mutually agreed to the same thing in the same sense; in other words, that a valid and binding contract was formed by the correspondence exchanged between the parties. We do not deem it necessary here to restate the voluminous correspondence of the parties already set forth, but suffice it to say that the plaintiff gave an option to the defendant, at the latter's request, in order to facilitate a sale. The option gave the defendant the right to sell the plaintiff's " Burke county lands at $10 per acre for all of it." Thereafter the defendant wired to the plaintiff, asking that the latter sell him (the defendant) the " Burke county lands " on substantially the same terms expressed in the option. The plaintiff promptly replied, agreeing to sell to the defendant on the terms stated. However, the defendant postponed the consummation of the purchase, on account of some alleged cloud on the title, and also wrote to the plaintiff that it would be necessary to have a survey and plat made of the lands, " so as to show the boundaries and correct acreage," since " the acreage mentioned in the deed to you was simply an estimate of about what the acreage should be." Subsequently the defendant wired to the plaintiff as follows: " Title satisfactory. Soon as survey completed about August 20th and is all right will remit cash payment and notes as agreed on." This telegram was promptly acknowledged and assented to in a letter from the plaintiff to the defendant.

Up to this time the minds of the parties had not met, but did the sending of this telegram and the unconditional and unequivocal acceptance of the terms thereof ripen the negotiations into a valid binding contract? Obviously, therefore, this telegram forms the crux of the case, it being contended by the defendant that the telegram did not bind him to take the property, unless

the survey was " all right " to him, and that it was not all right, because it showed that a certain parcel of land, known as that rented by John Smallwood, was not included in the plaintiff's Burke county lands; whereas the plaintiff contends that the words " and is all right," as used in the telegram, merely meant that the survey should be correct, in showing the exact number of acres, their location and boundaries. Construing this telegram in the light of the entire correspondence, and giving the words used in the telegram their usual and ordinary meaning (Civil Code of 1910, § 4268 (2) ), and also construing them most strongly against the defendant who wrote them (Civil Code, § 4268 (4) ), we are constrained to agree with the contention of the plaintiff. The correspondence exchanged between the parties shows clearly and beyond question that neither the defendant nor the plaintiff knew the exact boundaries of, or the number of acres in, the plaintiff's Burke county lands, but that the plaintiff agreed to sell, and the defendant to buy, *all* of the plaintiff's Burke county lands, provided that the plaintiff's title thereto was good and that a plat and survey of the lands showing the exact number of acres, their location and boundaries, be made. This was done, and thereupon the agreement between the parties automatically ripened into a binding contract.

It follows that the mere fact that the survey showed that 89 acres of land, the parcel rented from the plaintiff by John Smallwood, did not belong to the plaintiff, was legally insufficient to authorize a repudiation of the contract by the defendant to buy *all* of plaintiff's Burke county lands, aggregating approximately 1572 acres. To allow the defendant to do so would be to permit him to construe his own words, the meaning of which is clear, in a sense most favorable to himself — a thing which the law does not sanction. Civil Code (1910), § 4268 (4).

It follows from what has been said that the petition was not subject to the general demurrer interposed. We are also of the opinion that the petition, after its amendment, was not subject to any of the special demurrers. The correct measure of the alleged damages was set forth, and the other allegations demurred to were relevant for the purpose of throwing light upon the real motive of the defendant in his breach of the alleged contract,—whether his objection to the plat was an honest one, or whether it

was a mere subterfuge to enable him to escape from a bad trade.

*Judgment affirmed. Bloodworth, J., concurs specially. Luke, J., dissents.*

BLOODWORTH, J., concurring specially. Without agreeing to all that is said by Chief Judge Broyles in the opinion in this case, I concur in the judgment of affirmance.

LUKE, J., dissenting. As I construe the instant petition, the minds of the parties did not meet in the same sense, at the same time, about the same thing. This being true, the parties did not enter into a binding contract of purchase and sale. The seller was selling all of his " Burke county lands," and represented that this land included certain tracts, which may be designated, for the purpose of illustration, as tracts A, B, C, and D. The purchaser understood that he was buying of the seller all of the latter's " Burke county lands," aggregating approximately so many acres, comprised of tracts A, B, C, and D. The seller understood that the purchaser was to have a portion of the rents of these several tracts of land, and the purchaser understood the same thing. The seller admits in his petition that instead of owning tracts A, B, C, and D, from which he had heretofore collected rents, he only owned tracts A, B, and C, and a portion of D, and was, therefore, in no position to convey all of tracts A, B, C, and D, as he had contracted to do. This being true, I am forced to the conclusion that the minds of the parties did not meet in the same sense, about the same thing, at the same time. The seller of all " my Burke county lands," comprised in tracts A, B, C, and D, could not form an union of the minds by offering to reduce the price agreed upon or to purchase lands so as to approximate the acreage he had contracted to sell, nor delay the purchaser until he (the seller) might acquire title to all of that tract which he thought he owned but which, as a matter of fact, he did not own. The real question is, did he, as he represented, own, as a part of all " my Burke county lands," all of the several tracts that he represented he owned and that the purchaser understood at the time that he was buying. If there had been nothing more than a sale of all " my Burke county lands," perhaps the minds of the parties would have met, but when the seller and the purchaser both understood that the seller's " Burke county lands " consisted of certain tracts, and it later developed that the seller did not own all the

land comprising one of the tracts, the minds of the parties did not meet in the same sense, at the same time, about the same thing. Therefore, in my opinion, the petition failed to set forth a cause of action, and the trial judge erred in overruling the demurrer.