39181. COX BROADCASTING CORPORATION et al. v. NATIONAL COLLEGIATE ATHLETIC ASSOCIATION et al.
39182. NATIONAL COLLEGIATE ATHLETIC ASSOCIATION v. COX BROADCASTING CORPORATION et al.
39206. TURNER BROADCASTING SYSTEM, INC. v. COX BROADCASTING CORPORATION et al.

BELL, Justice.

This case concerns the validity of an order of the Fulton County Superior Court denying and granting certain injunctive relief.

The American Broadcasting Companies, Inc. (ABC) and Cox Broadcasting Corporation (Cox) filed this action on July 6, 1982, seeking to restrain the National Collegiate Athletic Association (NCAA) from allegedly breaching its contract with ABC. In order to obtain this relief, ABC and Cox asked that the trial court order the NCAA to specifically perform its obligations under their contract. In

particular, they contended that the NCAA had contractually promised to limit the presentation of a "Supplementary Series" of college football games to "cable and/or pay over-the-air television," but that, in violation of this agreement, the NCAA had agreed to allow the Turner Broadcasting System, Inc. (Turner) to televise the Series free over-the-air on Atlanta broadcast station WTBS. They alleged that if the NCAA was not restrained from going forward with Turner or from so contracting with other "superstations," ABC's and Cox's bargained for free over-the-air broadcast right would be substantially and irreparably harmed. ABC and Cox sought this relief for the 1982 through 1985 college football seasons.

The trial court found that the NCAA-ABC contract prohibited the NCAA from authorizing free over-the-air broadcasts of the Supplementary Series. In addition, the court found that the NCAA-Turner agreement for broadcast of the Supplementary Series during the 1982 and 1983 seasons breached the NCAA-ABC contract and that free over-the-air broadcasts by Turner would cause Cox and ABC irreparable harm. On this basis the trial court granted an interlocutory injunction restraining Turner's broadcast of the Supplementary Series for the 1983 season. However, the trial court denied injunctive relief for the 1982 season.

In addition, the trial court granted relief enjoining the NCAA from contracting with Turner or any other such "superstation" for the broadcast free over-the-air of the Supplementary Series for the 1983 through 1985 seasons.

In case no. 39181, Cox and ABC appeal from that portion of the trial court's order denying them injunctive relief for 1982. In case no. 39182, the NCAA cross-appeals from the trial court's grant of injunctive relief for the 1983 through 1985 seasons. In case no. 39206, Turner appeals making the same assertions as does the NCAA, and in addition, Turner questions the scope of further hearings already ordered by the trial court.

The NCAA is authorized by its member institutions to control all televising of NCAA football games. For 1982, the NCAA altered its prior policy of selling one network all the rights to telecast live NCAA college football free over-the-air by deciding to sell to two networks rights to televise live football games free over-the-air. In addition, the NCAA decided to sell the rights to televise a Supplementary Series of live NCAA football "via such media as cable and/or pay over-the-air television."

The NCAA Football Television Committee (the NCAA Committee), the negotiating arm of the NCAA, was then authorized to sell those three sets of football television rights in accordance with a statement of Principles of the NCAA (Principles) which served as a

guide or basis for negotiations between the NCAA and purchasers of television rights. In July of 1981, the NCAA and ABC began negotiations for one of the packages of free over-the-air rights for the 1982 through 1985 seasons. At this time they discussed the Supplemental Series and certain limitations on it. Although they did not specifically bargain for limitations on the method of public presentation of the Series, ABC stated that it believed such limitations were already part of the Principles of the NCAA, providing for the broadcast of the Supplementary Series "via cable and/or pay over-the-air television."

In late 1981, the NCAA Committee turned its attention to selling the Supplementary Series. In December of 1981 the NCAA held a meeting with parties interested in the rights to the Supplementary Series, and in late January of 1982, Turner and others made their bid for these rights. Turner's bid was accepted on January 27, 1982.

The Supplementary Series was to be broadcast over Turner's WTBS "superstation" and then picked up by an independent common carrier which would then distribute WTBS' signal via satellite to its cable system customers. Before signing a preliminary written agreement on Turner's accepted bid, the NCAA representatives inquired as to whether Turner could "black-out" the Supplementary Series in Atlanta so that it would not be shown free over-the-air in that area. Turner's representatives indicated that such a "black-out" was unfeasible. After this inquiry, a written preliminary agreement was signed on January 27, 1982.[1]

After the mid-December meeting concerning the Supplementary Series, ABC learned that Turner was one of the bidders on the rights to that series. At this time, ABC had in its possession a proposed draft of a written contract that had been mailed to it by the NCAA. In considering this proposal, ABC's representatives tried to negotiate into the contract some language to indicate that ABC's television rights were exclusive. Specifically, the language was: "It is agreed that other than 14 exposures carried by CBS, there shall be no other free over-the-air telecasts permitted (excluding certain exceptions)." This language was referred to as the "Turner language." ABC contacted the NCAA about adding this language to the proposed contract, but the NCAA refused to do so.

On January 29, 1982, ABC sent a telegram to the NCAA protesting the origination of the Supplementary Series free

---

[1] We express no opinion on whether this agreement was a binding contract at that time.

over-the-air on WTBS. During this time, ABC and the NCAA were in the process of trying to reach a final written contract. The NCAA had to have a final agreement prior to March 1, 1982 due to the scheduling of fall programming. On February 5, 1982, the NCAA sent a final proposed contract to ABC demanding acceptance by February 11, 1982, or else all understandings between the parties would be terminated. ABC signed the agreement and returned it to the NCAA on February 11, 1982. However, the letter, dated February 10, stated that ABC's acceptance was conditioned on the express understanding that ABC's right to telecast live NCAA college football was exclusive except in certain situations, with one exception being "The Supplementary Series of NCAA live football telecasts described in Paragraph 5(i) of the Agreement which may occur over cable or pay over-the-air television." In particular, ABC stated that its firm understanding was that there could not be "any local live over-the-air broadcast of college football of the type planned in Atlanta by WTBS."

In response, the NCAA, by letter dated February 16, 1982, indicated to ABC that ABC and the NCAA still did not have a contract because the NCAA could not accede to the construction of the contract relating to the Supplementary Series which ABC wished to impose as a condition of ABC's execution of the contract. The NCAA indicated that it was willing to let the language of the contract speak for itself if ABC would also. This letter concluded with a provision that ABC must withdraw the above condition relating to the Supplementary Series in order for the parties to have a contract.

Charles Stanford, the Vice-President of Legal and Business affairs for ABC Sports testified that after he received this February 16, 1982 letter from the NCAA, he and an NCAA representative agreed that the contract should be signed with the understanding that each party would preserve its differing position on whether the contract language allowed the presentation over WTBS. ABC subsequently withdrew the condition pertaining to the Supplementary Series, and on February 22, 1982 the parties signed a final contract. Charles Lavery, one of ABC's negotiators, testified that at that time he understood the effect of ABC withdrawing its condition was that the issue of how the Supplementary Series could be presented would be put off for the time being. Specifically, he stated: "They [the NCAA] recognized that we interpreted it [the contract language] one way and they interpreted it in another and we reserved whatever legal recourse was available to us."

After the execution of this contract, ABC and the NCAA continued to argue over whether Turner could telecast the Supplementary Series free over-the-air in the Atlanta area. In fact, at

the hearing below, James Spence, Senior Vice-President of ABC Sports, testified that ABC and the NCAA had never agreed as to whether the language now part of the ABC-NCAA contract prohibited initiation of the Supplementary Series over WTBS. This disagreement finally led to ABC and Cox filing this action on July 6, 1982.

We must first inquire whether NCAA and ABC had reached an agreement on the issue of how the Supplementary Series could be presented. If they did not, then ABC has no contractual rights relating to this issue, and no injunctive relief can be properly granted against the NCAA.

It is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject-matter, and in the same sense. See, *Fonda Corp. v. Southern Sprinkler Co.,* 144 Ga. App. 287 (1) (241 SE2d 256) (1977); *Jack V. Heard Contractors v. Adams Constr. Co.,* 155 Ga. App. 409, 412 (271 SE2d 222) (1980).

In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent. See, 1 Williston on Contracts, §§ 21-23, 94; 1 Corbin on Contracts, §§ 106-107; *Verdery v. Withers,* 30 Ga. App. 63, 72 (116 SE 894) (1923). In some instances, the only conduct of the parties manifesting intent is the express language of the agreement. In other instances, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence. See, 1 Williston on Contracts, § 21; 1, 3 Corbin on Contracts, §§ 106, 577; and *C & S Nat. Bank v. Williams,* 147 Ga. App. 205, 207-208 (249 SE2d 289) (1978).

After considering the writings and discussions of the parties surrounding the making of the contract, it is clear that there was no meeting of the minds upon the rights and obligations relating to restrictions on the presentation of the Supplementary Series. See, *Fonda Corp.,* supra. The parties agreed to the language of the contract relating to this issue; however, it is clear that when the contract was executed the parties did not agree as to what they intended by this language. The NCAA envisioned that the language did not prohibit it from contracting with Turner, and this understanding was conveyed to ABC. Conversely, ABC envisioned the language to provide it with rights that precluded the NCAA from

contracting with Turner, and this understanding was definitely conveyed to the NCAA. As stated by James Spence, Executive Vice-President of ABC Sports, the parties have never agreed on this issue. This case is different from the many cases in which the parties begin to disagree about the interpretation of contract language after the contract has been executed.

When parties to a contract, as in this case, know that they have different intents with respect to certain language before they enter into the contract, there can be no meeting of the minds upon the same subject matter and in the same sense and no agreement on that issue. See, *Fonda Corp.*, supra, and see, generally, 1 Williston on Contracts, § 78. Consequently, we find that ABC and the NCAA had no agreement or justifiable expectations relating to how the Supplementary Series could be presented; and therefore, ABC has no contractual rights pursuant to which injunctive relief could be granted.

Insofar as Turner's appeal in case no. 39206 challenges the scope of the December, 1982 hearings ordered by the trial court, in light of our decision today there is no need to rule upon it.

*Judgment affirmed in case no. 39181; judgment reversed in case nos. 39182 and 39206. Hill, C. J., Marshall, P. J., Clarke, Smith, and Gregory, JJ., and Judge Walter C. McMillan, Jr., concur. Weltner, J., disqualified.*

DECIDED DECEMBER 6, 1982.

*Charles H. Kirbo, Joseph R. Bankoff, Richard A. Schneider, Daniel H. Margolis, Gary J. Smith,* for appellants (case no. 39181).

*Long, Aldridge, Heiner & Stevens, James J. Thomas II, Troutman, Sanders, Lockerman & Ashmore, Robert W. Webb, Jr., Steven W. Korn,* for appellees (case no. 39181).

*Clay C. Long, James J. Thomas II,* for appellant (case no. 39182).

*Charles H. Kirbo, Joseph R. Bankoff, Robert W. Webb, Jr., Daniel H. Margolis,* for appellees (case no. 39182).

*Robert W. Webb, Jr., Steven W. Korn,* for appellant (case no. 39206).

*James J. Thomas II, Joseph R. Bankoff, Charles H. Kirbo, Daniel H. Margolis,* for appellees (case no. 39206).