A94A2004. AMWEST SURETY INSURANCE
COMPANY v. RA-LIN & ASSOCIATES, INC. et al.
(455 SE2d 106)

McMURRAY, Presiding Judge.

Plaintiff Amwest Surety Insurance Company ("Amwest") brought this contract action against defendant RA-LIN & Associates, Inc. ("RA-LIN") and RA-LIN's insurer, St. Paul Fire & Marine In-

surance Company ("St. Paul"), alleging that RA-LIN "refused to proceed with the completion . . ." of a construction project (hereafter "the Completion Contract") for low-income housing owned by the Housing Authority of the City of Grantville, Georgia ("Housing Authority"). As a result of RA-LIN's alleged breach of the Completion Contract, "Amwest was forced to contract with the next lowest bidder." A separate count asserted a claim in the amount of five percent of RA-LIN's total bid price against a bid bond issued by St. Paul. In its answer, RA-LIN admitted that it submitted a bid and that it "was chosen as the low bidder . . . ," but denied all other material allegations and asserted, inter alia, that no enforceable contract was ever reached or else Amwest itself breached any agreement by rejecting RA-LIN's tender of performance.

After discovery, RA-LIN moved for partial summary judgment and Amwest filed a cross-motion for partial summary judgment against both RA-LIN and St. Paul. The evidence adduced in support of these motions showed the following material facts: Amwest, as surety, issued a payment bond and performance bond to Dennis Welding Construction Company, Inc., the original contractor on a construction project for the renovation of certain low-income housing units owned by the Housing Authority. This original contractor was declared to be in default of its contractual obligations and the Housing Authority called on Amwest as surety to make good performance. Amwest determined to re-let the project for completion by another contractor. Alvin G. Rowe, a "Senior Consultant" with Surety & Construction Consultants, Inc., testified that "Amwest asked us [Surety & Construction Consultants, Inc.,] to . . . inspect the project, prepare our estimate of the cost to complete, and make recommendations on how to proceed to meet any obligations [Amwest] might have regarding the performance aspects of the bond." Amwest undertook to procure a "Relet Contractor to perform all work remaining to be completed in accordance with the terms and conditions of the original contract. . . ."

Mr. Rowe "prepared the [re-bid] documents . . . [and submitted] them to Amwest for [its] approval. . . ." "[A]ll five potential bidders were mailed those documents[, which contain an invitation to attend a] pre-bid conference." On Tuesday, May 28, 1991, Mr. Rowe held the pre-bid conference to go over the re-bid documents and to answer any questions for the potential bidders. Mr. Rowe "understood prior to the pre-bid conference that the Housing Authority would not accept a [completion] contract in which they were named as a party." A representative of the Housing Authority informed Mr. Rowe "that per HUD regulations they [the Housing Authority] would not be in a position to accept — or to enter into a contract [directly] with the contractor. . . ." Hugh Palmer, a project manager for RA-LIN, attended

the pre-bid conference. There, he questioned Mr. Rowe as to the identity of the other contracting party to the Completion Contract. Specifically, he expressed concern on the part of RA-LIN about contracting with Amwest. Due to ongoing litigation between Amwest and RA-LIN over an unrelated contractual dispute, RA-LIN preferred to contract directly with the Housing Authority. By affidavit, Mr. Palmer deposed: "In response to my question, Mr. Rowe told me that the successful bidder would contract with the Grantville Housing Authority." Mr. Rowe testified that he referred Mr. Palmer to the re-bid documents themselves, explaining "we can't finish the completion contract until we get an agreement with the owner [Housing Authority] because . . . it could go either way."

The "Invitation to Bid" contained in part the following two provisions relating to time: "The successful bidder will be notified no later than five (5) days after the bid opening and will be expected to immediately enter into the construction contract. The successful bidder will only begin operations upon receipt of a notice to proceed. The notice to proceed will set the date at which the contract time will commence. . . . All bids will be regarded as valid and in full force for 60 calendar days after receipt of bids." This latter provision is restated in the form bid proposal immediately above the place for the bidder's signature in the following language: This bid shall remain valid and *available for acceptance* for 60 calendar days from the bid date. (Emphasis supplied.) The "Scope of Work" provided that the successful bidder will be completing a "contract for Amwest Surety Insurance Company and the Housing Authority for the City of Grantville, Georgia. . . ." The re-bid documents further contained a proposed "Form of Agreement," i.e., the form of that "agreement which Amwest and the Housing Authority are anticipating entering into with the successful bidder as the Completion Contractor." The re-bid instructions stated that the successful bidder "may be required to enter into an agreement with Amwest only, or with the Housing Authority only." However, in either case, the form of agreement "shall not be grounds for the Completion Contractor to . . . refuse to enter into a contract as long as the actual completion contract used . . . conforms in principle to the form agreement. . . ." This suggested form agreement named Amwest and the completion contractor as the only parties to the completion agreement.

Defendant RA-LIN was one of only two firms to submit bids. Hugh Palmer "came to the bid opening . . ." on June 4, 1991, where Mr. Rowe opened the bids and determined that RA-LIN's bid was for the lowest dollar amount. Mr. Rowe told Mr. Palmer "as soon as I get an answer back from Amwest we'll be sending you a proposed completion agreement to sign. . . . [T]hat's our standard procedure. . . ." Mr. Rowe affirmed that he (or Amwest) "[was not] obli-

gated to accept the low bidder. . . ." Nevertheless, Amwest "[decided] to accept RA-LIN as the successful bidder[.]" On June 7, 1991, Mr. Rowe "faxed a draft completion agreement to RA-LIN for review and consideration." RA-LIN did not execute and return this completion agreement. When Mr. Rowe contacted James R. Fulford, president of RA-LIN, to inquire about execution of the contract, Mr. Fulford advised that RA-LIN was unwilling to contract directly with Amwest but would deal directly with the Housing Authority. Under cover of a letter dated June 26, 1991, Mr. Rowe forwarded "three more copies of the completion contracts to RA-LIN for its execution." On July 24, 1991, Mr. Rowe received from James R. Fulford of RA-LIN a facsimile communication, advising as follows: "In response to your request for a signed agreement between RA-LIN & ASSOCIATES, INC. and Amwest Surety Insurance Company for the completion of the work on the [Grantville Housing Authority] project, RA-LIN believes that due to current ongoing litigation between RA-LIN and Amwest that it is not in the best interest of either RA-LIN or Amwest to enter into a completion agreement. However, RA-LIN is willing to sign a contract with the Grantville Housing Authority for the completion of all work remaining on the stated job. . . . We also believe that during the pre-bid conference as a result of a question raised by our Hugh Palmer as to who RA-LIN would be signing a contract with. [sic] It was understood that RA-LIN would be signing a contract for completion with the Grantville Housing Authority. If that is the case, RA-LIN & ASSOCIATES, INC. is ready to sign a contract with the Grantville Housing Authority and begin work immediately."

The trial court found the two provisions relating to time created an ambiguity, to be construed strictly against Amwest as the drafter of the proposal documents. The trial court then concluded that RA-LIN's bid required acceptance within five days after the bid-opening ceremony, and that Amwest did not make a timely acceptance of RA-LIN's bid. Consequently, the trial court held that RA-LIN was entitled to summary judgment because no contract resulted. This appeal followed. *Held*:

1. In its first enumeration, Amwest contends the trial court erred in granting RA-LIN's motion for summary judgment, arguing that its acceptance of RA-LIN's offer to perform certain construction work for Amwest at a fixed price was timely. Specifically, it is urged that "Amwest had sixty days in which to accept RA-LIN's bid."

"The consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition." OCGA § 13-3-2. "This is true even where the [offer] provides that it remain[s] open for a stated time. *State Hwy. Dept. v. MacDougald*

*Constr. Co.*, 54 Ga. App. 310 (1) (187 SE 734) (1936)." *Greene v. Keener*, 198 Ga. App. 565, 566 (402 SE2d 284). "Where for a consideration an option is given, or offer made, which it is agreed shall remain open and subject to acceptance for a specified time, the party who thus grants the right to accept during such specified time can not withdraw the right of the other party to accept or assent within that time. . . . If without consideration a continuing offer is made, although the person making it may state a time within which it may be accepted, there is no binding contract, and he may withdraw the offer before acceptance. . . . A mere offer or proposition, until accepted, may be withdrawn. . . . If no time is prescribed for accepting an offer, it must be done within a reasonable time. Civil Code (1910), § 4230 [now OCGA § 13-3-2]; [cits.]." *Prior v. Hilton &c. Lumber Co.*, 141 Ga. 117, 118 (1) (80 SE 559). In the case sub judice, there is no contention that the 60-day period for acceptance provided in the documents prepared for Amwest by Mr. Rowe is supported by any consideration. Accordingly, there is no option for the benefit of Amwest, and RA-LIN's bid was revocable at will before acceptance.

Amwest next argues that a binding contract was formed when "Al Rowe initially transmitted to RA-LIN by telefacsimile a proposed completion contract form, based on the form included in the Rebid Documents, on June 7, 1991, for RA-LIN's review." That communication would have been made within the five-day period from the bid opening during which the successful bidder was to be notified. For purposes of this appeal we assume, without deciding, that Amwest assented to RA-LIN's bid price by "fax[ing] a draft" (not signed by Amwest) of the Completion Contract which the surety "[anticipated] entering into with the successful bidder. . . ." But see *Holbrook v. City of Atlanta*, 139 Ga. App. 510, 511 (2) (229 SE2d 21). Nevertheless, the trial court's grant of summary judgment to RA-LIN was correct. No contract was formed between Amwest and RA-LIN by that June 7, 1991, telefacsimile communication because the parties did not mutually agree on the identity of one of the contracting parties.

"The concept of a contract requires that the minds of the parties shall meet and accord at the same time, upon the same subject-matter, and in the same sense. In the absence of this meeting of the minds, there was no contract between the alleged contracting parties. *Jones v. Ely*, 95 Ga. App. 4 (1) (96 SE2d 536); *Ga. S. & F. R. Co. v. Adeeb*, 15 Ga. App. 831 (1) (84 SE 323) (1915)." *Fonda Corp. v. Southern Sprinkler Co.*, 144 Ga. App. 287, 291 (1) (241 SE2d 256). "In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning

which the other contracting party knew the first party ascribed to his manifestations of assent. [Cits.]; *Verdery v. Withers*, 30 Ga. App. 63, 72 (116 SE 894). . . . In some instances, the only conduct of the parties manifesting intent is the express language of the [purported] agreement. In other instances, the circumstances surrounding the making of the [alleged] contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence. [Cits.]" *Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn.*, 250 Ga. 391, 395 (297 SE2d 733).

In the case sub judice, Alvin G. Rowe had reason to know (if not actual knowledge) from the time of the pre-bid conference that RA-LIN intended to contract with the Housing Authority and not with Amwest. This was confirmed by the post-bid telephone conferences between Mr. Rowe and James R. Fulford, the president of RA-LIN, as well as by the July 24, 1991, letter of James R. Fulford. However, according to the express language of the re-bid documents prepared by Mr. Rowe for Amwest, the successful bidder "may be required to enter into an agreement with Amwest only or with the Housing authority only." Doubtless, Amwest intended that this option was to be exercised by itself, in its sole discretion, and not by RA-LIN. However, the document is silent on this point and may reasonably be construed as giving that choice to the completion contractor. A writing which is "capable of being construed two ways . . . will be construed against the preparer and in favor of the non-preparer. OCGA § 13-2-2 (5)." *Hertz Equip. Rental Corp. v. Evans,* 260 Ga. 532, 533 (397 SE2d 692). That is also a permissible construction of Mr. Rowe's equivocal response to Hugh Palmer's query as to the identity of the other party to the Completion Contract. See also OCGA § 13-3-3. "When parties to a [purported] contract, as in this case, know that they have different intents with respect to certain language before they enter into the contract, there can be no meeting of the minds upon the same subject matter and in the same sense and no agreement on that issue. See *Fonda Corp. [v. Southern Sprinkler Co.,* 144 Ga. App. 287, 291 (1)], supra[; cits.]" *Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn.*, 250 Ga. 391, 396, supra. See also Restatement, 2d, Contracts, § 20 (1) (b). "[A] judgment right for any reason must be affirmed. *Simmons v. Boros*, 255 Ga. 524, 525 (341 SE2d 2) (1986)." *Shapiro v. Lipman*, 259 Ga. 85, 86 (377 SE2d 673).

2. Amwest's remaining enumeration, regarding the denial of its own motion for partial summary judgment against RA-LIN and St. Paul, has been considered and found to be rendered moot by our determination in Division 1.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED MARCH 8, 1995.

*Thompson & Slagle, Jefferson B. Slagle, David J. Merbaum,* for appellant.

*Smith & Diment, Dana G. Diment,* for appellees.