## A98A1878. DESTAG OF NORTH AMERICA, INC. v. LAN INTERNATIONAL, INC.
### (512 SE2d 365)

BEASLEY, Judge.

Destag of North America, Inc., the sole majority shareholder of Rowan Granite Quarry, Inc., brought this action in equity against Rowan's sole minority shareholder, LAN International, Inc., seeking specific performance of stock purchase rights under a shareholders' agreement.

Subparagraph 2 (a) of the agreement requires any shareholder desiring to sell any of his shares to first obtain "a bona fide written offer" to purchase all of the shares for a fixed cash price and, within seven days after receipt of the offer, to transmit to the company and other shareholders copies of the offer setting forth the date of the offer, the proposed price per share, and other terms and conditions upon which the purchase is proposed to be made, including the name and address of the prospective purchaser. Under subparagraphs 2 (b) and (c), transmittal of the offer constitutes an offer by the selling shareholder to sell his shares "at the price and upon the terms set forth in subparagraph 5 (a)" to either the company or the remaining shareholders if the company declines to exercise its right of first refusal. The company, and thereafter the remaining shareholders, are each given 30-day periods to purchase the selling shareholder's shares. Subparagraph 5 (a) provides that, at the option of the company or the purchasing shareholders, the purchase price per share and terms of payment for the selling shareholder's stock shall be either (i) the purchase price per share contained in the transmitted offer; or (ii) the "agreed value" per share, as defined in the shareholders' agreement; or (iii) the book value per share, as also defined in the agreement.

LAN sent Rowan and Destag a letter dated March 31, 1995, informing them that it had received a "tentative" $962,500 offer for its shares, representing ownership of 19.5 percent of the stock in the company. In the letter, LAN requested Rowan and Destag to inform it whether either of them would be exercising their respective rights of first refusal. LAN, being without a copy of the shareholders' agreement, also requested information concerning other limitations or restrictions upon its transfer of shares.

Rowan responded with a letter dated April 6 stating that it was considering whether or not to exercise its right of first refusal, but was concerned that the offer was only tentative and could not respond further until LAN confirmed that this was in fact a bona fide offer.

By letter dated April 7, LAN sought to explain that the offer was bona fide but had been described as tentative as a result of restric-

tions in the shareholders' agreement and because the offer was subject to a satisfactory inspection by the offeror of Rowan's quarries.

Destag then sent LAN a letter dated April 12 acknowledging that LAN had received a bona fide third-party offer, stating that it desired to exercise its right of first refusal, with the purchase price to be the per share book value of the company as computed by Rowan's independent public accountant, and attempting to waive strict compliance with the terms of the shareholders' agreement to the extent that LAN's prior letters failed to comply. LAN responded by letter of April 14 rejecting this proposal, in that first, LAN had not been informed it could be required to sell its shares at a price less than the received offer, and second, the April 6 letter suggested there were no such limitations.

Destag's letter of the same date informed LAN that the closing for the sale of its shares to Destag had been scheduled for May 25. On May 11, Destag sent LAN another letter informing it that Rowan's accountant had determined that the shares of Rowan had a *negative* book value. The accountant made this determination based on unaudited financial information provided by Rowan's management. Because LAN refused to appear at the closing and transfer its shares to Destag without compensation, Destag initiated this suit.

In denying Destag's motion for summary judgment, the court ruled that the disparity between the prices offered by Destag and the third party is great enough to create a material issue of fact as to whether the shareholders' agreement is being applied in an unconscionable manner. If so, the court ruled, equity will not decree specific performance of it. The court allowed Destag 30 days to respond to LAN's claim that it was entitled to summary judgment and later denied such to LAN but extended discovery for an additional 90 days.

Destag renewed its motion for summary judgment based on evidence showing that the third-party offer was so riddled with conditions that it was not truly an offer. Specifically, it was contingent on whether the offeror, in its sole discretion, accepted a review of Rowan's financial statements, a geological examination of its quarries, and a report by the offeror's own accountants into the legal feasibility of the purchase.

Based on this evidence, the court denied Destag's renewed motion for summary judgment and granted summary judgment to LAN, ruling that under the shareholders' agreement the right of first refusal is conditioned upon the selling shareholder's obtaining a "bona fide written offer," and the third-party offer received by LAN does not qualify as such because the discretionary contingencies render it unenforceable.

Destag argues that this case is resolved by application of elemental principles of contract formation. True. As stated in OCGA

§ 13-3-2, "[t]he consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition."[1]

LAN's letter of March 31 showed in clear and unmistakable terms that it was proposing to sell its shares to Destag or Rowan at the price offered to it by the third party, i.e., $962,500. Neither that letter nor the one of April 7 triggered subparagraphs 2 (b) and 5 (a) of the shareholders' agreement, because these provisions of the agreement come into play only through the selling shareholder's transmittal of copies of a written offer containing the information required by subparagraph 2 (a), and LAN never did that. Therefore, Destag could not force LAN to part with its shares at a different price from that set forth in its offer without LAN's consent. Through Destag's letter of April 12, it presented to LAN a counteroffer to LAN's offer rather than an acceptance of it. By its April 14 letter to Destag, LAN promptly and flatly rejected the counteroffer. For these reasons, summary judgment for LAN was proper.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 16, 1999.

*Hotz & Associates, Walter H. Hotz*, for appellant.
*Phelps, Campbell & Webb, R. Chris Phelps, Hodges & Leverett, Robert F. Leverett*, for appellee.

---

[1] *Amwest Surety Ins. Co. v. RA-LIN & Assoc.*, 216 Ga. App. 526, 529 (1) (455 SE2d 106) (1995).