[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

-------------------------------------

No. 07-11292
Non-Argument Calendar

-------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 25, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 05-00148-CV-1

SOUTH CENTRAL STEEL, INC.,

Plaintiff-Appellant,

versus

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,
MCKNIGHT CONSTRUCTION CO., INC.,
a Georgia Corporation,

Defendants-Appellees.

----------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Georgia
----------------------------------------------------------------

**(January 25, 2008)**

Before EDMONDSON, Chief Judge, BIRCH and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant South Central Steel, Inc. ("South Central") appeals the grant of summary judgment in favor of Defendant-Appellee McKnight Construction Co. ("McKnight Construction") in South Central's suit for breach of contract.[1]  No reversible error has been shown; we affirm.

The facts are set out fully in the district court's comprehensive opinion. Stated briefly, on 14 April 2004, McKnight Construction contracted with the State of Georgia to perform construction work at the Henderson Library at Georgia Southern University in Statesboro, Georgia (the "Library Project").  McKnight Construction subcontracted steel erection and fabrication work to Houston Steel Fabricators/Erectors ("Houston Steel").  In January 2005, when Houston Steel encountered financial problems and could purchase no steel on its own account, Houston Steel contacted South Central to supply steel for the Library Project. South Central supplied steel worth $51,609.80 to Houston Steel -- knowing of Houston Steel's financial difficulties -- and now seeks to recover that amount, plus other damages, from McKnight Construction.[2]

South Central bases its contention that McKnight Construction is responsible for the costs of the steel on a series of communications between Roger

---

[1] South Central also sued Travelers Casualty and Surety Company of America, McKnight's surety on the project at issue.

[2] In its complaint, South Central sought damages of $125,000.

Ricks, President of South Central, and William McKnight, president of McKnight Construction. Ricks testified by deposition that, as a result of Houston Steel's financial problems, South Central would supply the steel for the Library Project only if it could deal with the general contractor, McKnight Construction. Notwithstanding its desire to deal directly with McKnight Construction, on 13 January 2005, South Central had a first shipment of steel delivered to Houston Steel for the Library Project; Houston Steel paid South Central for that shipment. When Houston Steel sought additional supplies, South Central was unwilling to supply the steel; but Ricks reiterated South Central's willingness to contract directly with McKnight Construction.

At some point after 13 January 2005, according to Ricks, Ricks told McKnight that South Central would provide the steel to the Library Project if South Central received a purchase order from McKnight Construction; McKnight said he would send the purchase order. On 27 January 2005 -- although no purchase order had been received -- South Central ordered $6,619.80 of steel from one of South Central's suppliers to be delivered to Houston Steel. That steel was shipped to Houston Steel; South Central claims that it has not been paid for that steel.

On 2 February 2005, South Central sent McKnight Construction a "material purchase agreement" pursuant to which South Central would supply steel to the Library Project to be paid for by McKnight Construction. That this " material purchase agreement" was never signed by McKnight Construction is undisputed.

On 7 February 2005, McKnight Construction faxed and mailed a transmittal letter with an attached purchase order for $292,667 of steel to South Central (the "Purchase Order"). The transmittal letter -- signed by McKnight -- stated: "PLEASE SIGN ALL THREE COPIES AND RETURN. UPON RECEIPT, WE WILL SIGN AND FORWARD YOU ONE EXECUTED COPY."

Ricks concedes that he did not sign and return the Purchase Order when he received the 7 February fax. Instead, upon receipt, Ricks faxed a counter-proposal seeking changes in the Purchase Order: South Central objected to terms that would have made South Central responsible for failure due to fabrication and proposed a new letter agreement with terms limiting South Central's responsibilities. The counter-offer concluded as follows: "We ask that you acknowledge receipt of this letter and acceptance of the terms written within by simply signing and returning a copy via fax." McKnight Construction did not accept the proposed counter-offer.

Although McKnight Construction had not agreed to South Central's counter-offer, on 10 February 2005, South Central ordered $44,990 of additional steel for the Library Project; that steel was picked up by Houston Steel. South Central claims to have received no payment for that steel.

At some point -- the record is unclear exactly when -- South Central received the mailed copy of the Purchase Order (the one that had been faxed earlier). Ricks claims to have signed that copy upon receipt and to have returned it to McKnight Construction, even though the counter-offer had been sent earlier.[3] The only copy of a Purchase Order presented in response to the motion for summary judgment was unsigned on behalf of McKnight Construction. By letter dated 21 February 2005, McKnight Construction notified both Houston Steel and South Central that it would procure steel for the Library Project elsewhere because Houston Steel was not AISC certified as required for the Library Project. South Central responded that their right to payment from McKnight was not contingent on Houston Steel being AISC certified. This litigation ensured.

---

[3]McKnight disclaims receipt of the mailed copy of the Purchase Order signed by South Central until after litigation began. At the summary judgment stage of proceedings, we "must draw all reasonable inferences in favor of the nonmoving party," and we "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 120 S.Ct. 2097, 2110 (2000).

5

Under Georgia law -- no dispute exists that Georgia law applies -- a contract requires an agreement of the parties. Unless and until a meeting of the minds is reached on all essential terms, a contract is incomplete and unenforceable. See, e.g., Frickey v. Jones, 630 S.E.2d 374 (Ga. 2006) (no enforceable settlement agreement reached because insurer's response to settlement offer conditioned acceptance on claimant's agreement with additional term); Cox Broadcasting Corp. v. National Collegiate Athletic Assoc., 297 S.E.2d 733, 737-38 (Ga. 1982) (no enforceable contract because parties agreed to contract language but disagreed from time of purported contract formation to meaning of that language); O.C.G.A. 13-3-2 ("The consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract...."). Agreement is also the lynchpin for a contract for sale of goods under Georgia's version of the Uniform Commercial Code ("UCC"): "A contract for sale of goods may be made in any manner sufficient to show agreement...." O.C.G.A. 11-2-204.

The district court concluded -- and we agree -- that the record evidence disclosed no material fact in dispute: no reasonable jury could find that McKnight Construction and South Central agreed to terms of a steel supply contract for the Library Project. Even accepting all reasonable inferences in favor of South Central, the express terms of the Purchase Order required specifically that it be

6

returned to McKnight Construction for execution by McKnight Construction; the record evidence for summary judgment purposes requires us to accept that South Central returned an executed Purchase Order to McKnight Construction but supports no inference that McKnight Construction signed the Purchase Order. And while the record is unclear about when South Central signed the Purchase Order, that it was after South Central rejected the terms of the Purchase Order and submitted a counter-offer to McKnight Construction is clear. South Central can not have it both ways: it cannot first send a counter-offer and then -- without agreement by McKnight Construction -- later accept the original offer. The counter offer operated as a rejection of the Purchase Order. See Frickey, 630 S.E.2d at 376-77; Calhoun v. Cullum's Lumber Mill, Inc., 545 S.E.2d 41, 45 (Ga. App. 2001).

South Central argued before the district court that its counter offer constituted an acceptance of the Purchase Order under Section 2-207 of the UCC, O.C.G.A. § 11-2-2-207, which uses these words:

> A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional different terms.

7

South Central seems to have abandoned that argument on appeal. In addition, the counter-offer was no "definite...expression of acceptance or a written confirmation." And, the counter-offer expressly requested McKnight Construction's assent to the modification. Section 2-207 does not assist South Central. In this case, when McKnight Construction received the counter proposal, it reasonably could assume that (i) South Central had rejected the terms of the Purchase Order, (ii)negotiations were continuing, and (iii) no contract had been formed. See Duval & Co. v. Malcom, 214 S.E.2d 356 (1975) ("meeting of the minds" is a condition precedent to application of section 2-207).

The summary judgment record fails to present a material issue on the existence of an enforceable contract between South Central and McKnight Construction. When South Central ordered additional steel for Houston Steel on 10 February 2005 -- after rejecting the Purchase Order terms and knowing of Houston Steel's financial difficulties -- it assumed the risk that Houston Steel count not make payment.[4]

AFFIRMED.[5]

---

[4]South Central makes no argument on appeal -- and we do not consider -- whether these facts would support a non-contract based remedy.

[5]The district court also concluded that South Central's claim is defeated by the statute of frauds. Because we conclude that South Central failed to proffer sufficient evidence to place the existence of an enforceable contract in dispute, we do not reach this issue.