A03A2308. TAYLOR v. KENNESTONE HOSPITAL, INC. et al.

(596 SE2d 179)

ELLINGTON, Judge.

Donald R. Taylor, M.D., appeals from an order of the Cobb County Superior Court granting summary judgment to Kennestone Hospital, Inc. and its governing body, Wellstar Health System, Inc. In several related enumerations of error, Taylor contends the superior court erred in finding Kennestone and Wellstar immune from liability under the federal Health Care Quality Improvement Act of 1986[1] ("the HCQIA") for claims arising out of their decision denying Taylor's application to renew his medical staff privileges. Finding no reversible error, we affirm.

Summary judgment is appropriate when no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "HCQIA immunity is a question of law for the court to decide and may be resolved whenever the record in a particular case becomes sufficiently developed." (Footnote omitted.) Bryan v. James E. Holmes Regional Med. Center, 33 F3d 1318, 1332 (11th Cir. 1994). Further, as to the application of HCQIA immunity, the court determines whether "a reasonable jury, viewing the facts in the best light for [Taylor], might conclude that he has shown, by a preponderance of the evidence, that the hospital's actions are outside the scope of [42 USC] § 11112 (a)." (Citations and punctuation omitted.) Davenport v. Northeast Ga. Med. Center, 247 Ga. App. 179, 180 (542 SE2d 525) (2000). Viewed in this light, the record reveals the following relevant, undisputed facts.

The appellees hired Taylor in 1992 to work as an anesthesiologist at Kennestone Hospital. In May 1994, Wellstar's medical director confronted Taylor concerning complaints that Taylor had sexually harassed a nurse. Taylor reviewed the sexual harassment policy with the director and assured him that he would comply with it. In 1996, however, the appellees received new complaints involving sexual misconduct by Taylor. Upon investigating those complaints, the

---

[1] 42 USC § 11101 et seq. The superior court also briefly considered the interaction of the HCQIA with Georgia's peer review immunity statutes, OCGA §§ 31-7-132 and 31-7-141, concluding that "to the extent that peer review immunity under OCGA § 31-7-132 (a) is conditioned upon the absence of motivating malice, it is preempted by the HCQIA." The court, however, never specifically applied Georgia's peer review statutes to the facts of this case.

appellees discovered many other incidents of harassing behavior toward nurses, including inappropriate gestures and remarks, offensive touching, and lewd suggestions, like offering to prescribe diet drugs to the nurses in exchange for the opportunity to perform breast and vaginal examinations on them. Some nurses reported being afraid to work while Taylor was on duty.

The appellees' ongoing investigation also revealed misconduct toward patients, including incidents where Taylor admittedly gave young female patients rectal and vaginal examinations, yet failed to note in the patients' medical records that the examinations were needed or that he even performed them. Nurses also reported that Taylor pinched female patients' nipples with a hemostat, allegedly to check their responsiveness to anesthesia. He also unnecessarily exposed female patients' breasts during medical procedures.

When Kennestone confronted Taylor with these complaints, he admitted he had a sexual harassment problem. He explained that he looked at young female patients out of curiosity, stating, "maybe I am a pervert, I honestly don't know." Faced with possible disciplinary action, Taylor voluntarily resigned his medical staff privileges on November 20, 1996, and entered impaired-physician treatment with a psychiatrist specializing in physician sexual behavior disorders. Although Taylor contends he rescinded his resignation after Kennestone reported it to the National Practitioner Data Bank,[2] he admits he nevertheless thereafter agreed to see patients at Kennestone only on an emergency basis.

The appellees continued their investigation through April 1997, discovering additional allegations of inappropriate and sexually harassing behavior by Taylor. In June 1997, Taylor and his psychiatrist developed a plan for his seeing patients at Kennestone and sent it to the appellees. The plan included continued therapy, patient satisfaction surveys, staff surveys, and monitoring. On September 25, 1997, after months of consideration, both the Medical Executive Committee ("MEC") of Kennestone Hospital and the Board of Directors of Wellstar (then Promina) wrote Taylor substantially similar letters allowing him to see patients at the hospital so long as he complied with the guidelines established by his treating psychiatrist. In its letter, the MEC reprimanded Taylor for his conduct and warned him that any

---

[2] The HCQIA requires health care entities to report the acceptance of a resignation or suspension in return for not conducting investigations or disciplinary proceedings to the National Practitioner Data Bank, which was established to collect and disseminate information on health care providers. 42 USC §§ 11133-11134. Prior to admitting a physician to its staff, a hospital must obtain that physician's records from the data bank. 42 USC § 11135.

other improper behavior or his failure to comply with his psychiatrist's plan could result in "suspension, termination or restriction of [his] clinical privileges."

In January 1998, Taylor submitted his application for reappointment to the medical staff. The application did not contain any documents showing compliance with his psychiatrist's plan. After the appellees requested information showing compliance with the plan, Taylor's attorney sent the appellees a letter contending Taylor was in compliance. When the requested documents were not produced, the appellees audited Taylor's medical records. The audit revealed departures from the psychiatrist's plan, such as Taylor's failure to complete patient satisfaction surveys. Based on the audit results, the MEC recommended denying Taylor's application for reappointment. In a letter dated November 19, 1998, the appellees notified Taylor of this recommendation and advised him he was entitled to a hearing.

Taylor requested a hearing before the MEC. The appellees notified Taylor of the hearing date, set forth the nature of the complaints against him, and outlined the evidence supporting its recommendation. The parties agreed that the matter would be heard before a hearing panel, which would issue a report and recommendation to the MEC. An evidentiary hearing was held on January 18, 1999, and Taylor was represented by legal counsel. The transcript of that proceeding reveals that Taylor failed to comply with his psychiatrist's plan which required that Taylor regularly attend therapy sessions and properly document his interaction with patients and hospital staff. The hearing panel recommended that Taylor be reappointed to the medical staff only upon the receipt of reports from Taylor's psychiatrist certifying compliance with the plan.

On February 9, 1999, the MEC accepted the hearing panel's recommendation with minor modifications, essentially reversing its November 1998 recommendation that Taylor's medical staff privileges be revoked. The MEC recommended that Taylor be reappointed for a trial period of three months, his privileges contingent upon his compliance with the plan and the appellees' receipt of quarterly written reports from Taylor's psychiatrist. The MEC forwarded this recommendation to Wellstar.

On March 4, 1999, Wellstar's board of trustees rejected MEC's recommendation and voted to deny Taylor's application for reappointment to the medical staff. The board's decision was based upon Taylor's failure to comply with his psychiatrist's plan and the seriousness of the sexual misconduct reported. On March 8, 1999, the board notified Taylor of its decision in a hand-delivered letter. The letter contained the basis for the board's decision and advised Taylor of his right to a hearing before a hearing panel of the board and to appellate review. On April 7, 1999, Taylor requested a hearing. On

April 22, 1999, Wellstar notified Taylor of the hearing date, advised him of the evidence against him, and provided a witness list.

On June 1, 1999, Taylor received an evidentiary hearing before a Wellstar hearing panel which lasted almost six hours. He was represented by legal counsel. The appellees submitted evidence of their investigation and the nature of the complaints against Taylor. They also submitted evidence that Taylor, by his own admission, failed to fully comply with his psychiatrist's plan. Taylor's psychiatrist testified that Taylor suffered from an ongoing psychiatric sexual behavior disorder requiring continued treatment. The psychiatrist testified that Taylor's sexual misconduct could recur.

On June 29, 1999, the hearing panel decided unanimously to deny Taylor's application for reappointment to the medical staff. The panel's decision was based primarily on Taylor's failure to comply with the plan. Taylor was notified by certified letter of the panel's findings and of his right to appellate review. On July 29, 1999, Taylor requested appellate review before Wellstar's full board of trustees.

On September 2, 1999, Taylor appeared with counsel before the Wellstar board of trustees for oral argument. Taylor was advised of but declined his right to personally address the board. Following counsel's oral argument, the board voted unanimously to accept the hearing panel's decision and to deny Taylor's application for reappointment to the medical staff. Wellstar notified Taylor of its decision in writing on October 8, 1999.

1. (a) On appeal to this Court, Taylor contends the superior court erred in finding the appellees immune from liability under the HCQIA for peer review actions that resulted in the revocation of Taylor's hospital privileges. In his first two enumerations of error, Taylor more specifically argues that the trial court should have considered each step in the peer review process separately; and, if it had done so, it would have concluded that HCQIA immunity did not extend to the September 25, 1997 letters the appellees wrote him because these "reprimands" constituted separate adverse peer review actions for which he received no notice and no hearing. Taylor also contends these reprimands tainted the process that followed because they were the adverse decisions in which the appellees required Taylor to comply with his psychiatrist's practice plan.

First, the evidence does not support a finding that these letters constituted peer review action for which notice and a hearing are required. Taylor has not shown that these letters constituted *adverse* peer review action *imposed by the appellees* under the HCQIA. The HCQIA defines "professional review action" in part as an "action or recommendation of a professional review body" that "affects (or may affect) adversely the clinical privileges" of the physician. 42 USC

§ 11151 (9). Immunity for such peer review action is dependent on the physician receiving adequate notice and a hearing. 42 USC §§ 11111 (a) (1); 11112 (a) (3).

The appellees wrote the September 25, 1997 letters after Taylor had voluntarily discontinued seeing patients at Kennestone to avoid formal disciplinary action by the hospital and after he voluntarily enrolled in an impaired-physician treatment program. The appellees issued the letters in response to Taylor's own suggestion that he be allowed to resume seeing patients pursuant to his psychiatrist's plan. Thus, the September 25 letters do not impose a sanction or restrict or adversely affect Taylor's medical staff privileges. To the contrary, they enlarged privileges Taylor had previously voluntarily curtailed. The letters show that the appellees permitted Taylor to see patients at the hospital pursuant to his own psychiatrist's plan, and, so long as Taylor remained in compliance with that plan, the appellees would not take any formal action against him based on the reported acts of sexual misconduct. The letters memorialize the parties' negotiated, nonadversarial, informal attempt to resolve the problem, and Taylor himself admitted as much.[3] They did not constitute adverse action by the peer review board requiring notice and a hearing.

(b) Second, even if the September 25, 1997 letters could be construed as peer review action, the record shows that Taylor was afforded adequate notice and fair process under the circumstances. See *Rogers v. Columbia/HCA of Central Louisiana*, 971 FSupp. 229, 237 (III) (C) (3) (W.D. La. 1997) (doctor received fair process where hospital summarily temporarily suspended him in a letter, monitored him during a ten-month probationary period, and warned him that a peer review committee would be evaluating his process). See also Division 2, infra.

2. Taylor contends the superior court erred in finding the appellees immune from liability for denying his application for reappointment to the medical staff because material issues of fact remain as to whether the entire peer review process was reasonable and whether he was afforded adequate notice and a hearing. In addition to his complaints concerning the September 25, 1997 letters, Taylor contends he did not receive notice of the February 9, 1999 decision of the MEC recommending his reappointment and that the appellees violated their own bylaws by granting his request for an additional six-hour evidentiary hearing following Wellstar's March 4 vote to

---

[3] Taylor testified: "I agreed with Kennestone that I would restrict my number of admissions to just basically true emergencies." He also agreed that his "sexual harassment issues" were "resolved by [his] agreement to comply with the practice plan." After the letters issued, Taylor believed: "I did not feel that my privileges were limited. I was able to admit anybody I wanted to."

deny his application for reappointment. Further, he contends the peer review process was unreasonable because it was motivated by malice against him. He contends the evidence against him shows that his ability as an anesthesiologist was never questioned and that there were no new complaints against him after November 1996.

The HCQIA provides immunity to professional review bodies and to persons who participate or assist as a member of or as staff to the review body under any federal or state law. 42 USC § 11111 (a) (1). For immunity to attach under the HCQIA, peer review action must be taken:

> (1) in the reasonable belief that the action was in the further-ance of quality health care, (2) after a reasonable effort to obtain the facts of the matter, (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and (4) in the reasonable belief that the action was warranted by the facts known after such reason-able effort to obtain facts and after meeting the requirement of paragraph (3).

42 USC § 11112 (a). As we have held:

> The legislative history of § 11112 (a) indicates that its rea-sonableness requirements were intended to create an objec-tive standard, rather than a subjective good faith standard. The plaintiff bears the burden of proving the peer review process was not reasonable as a matter of law. Under the Act, a professional review action shall be presumed to have met the requisite conditions for immunity unless the presump-tion is rebutted by a preponderance of the evidence.

(Citations and punctuation omitted.) *Patton v. St. Francis Hosp.*, 260 Ga. App. 202, 206 (1) (c) (581 SE2d 551) (2003). Under the HCQIA, a peer reviewer's state of mind or malicious motive is immaterial. Id. at 208-209 (2). If the prerequisites for immunity are satisfied, then the professional review body and its members cannot be held liable for damages under federal or state law. Id. at 206 (1) (c).

Based on the record before us, the superior court properly found that Taylor failed to rebut the presumption that the peer review process met the criteria of 42 USC § 11112 (a). The appellees' reason-able investigation adduced evidence demonstrating that Taylor had a history of sexual misconduct toward nurses and patients. When the appellees informed Taylor of these complaints, he admitted he had a sexual harassment problem, stopped seeing patients at Kennestone,

and sought psychiatric treatment. However, he admittedly failed to fully comply with his own psychiatrist's plan for resuming seeing patients in the hospital. On the evidence before them, the peer reviewers could reasonably believe their actions were warranted and that those actions furthered quality health care. *Patton v. St. Francis Hosp.*, 260 Ga. App. at 206-208 (1) (c) (i), (ii), (iv); *Davenport v. Northeast Ga. Med. Center*, 247 Ga. App. at 184-185 (1) (a) (physician's misconduct does not have to relate to his or her medical performance, but can pertain to interaction with hospital personnel and the failure to follow hospital policies).

Taylor also failed to adduce evidence overcoming the appellees' rebuttable presumption that he was afforded adequate notice and a hearing pursuant to 42 USC § 11112 (a) (3) and (b). The record reveals that Taylor and the appellees attempted to negotiate an informal, nonadversarial resolution to the problems his behavior caused for hospital staff and patients prior to his application to renew his medical staff privileges. Moreover, after Taylor applied to renew his medical staff privileges, he had two full evidentiary hearings and appellate review before the appellees entered a final decision denying his application. The record shows he was represented by counsel, was timely apprised of all the evidence and witnesses against him, called and cross-examined witnesses, and introduced evidence. The notice and process in this case were substantially similar to that which we found objectively adequate in *Patton v. St. Francis Hosp.*, 260 Ga. App. at 207 (1) (c) (iii), n. 4.

We cannot agree, as Taylor asserts, that any lack of notice with respect to the September 25 letters or the February 9 MEC recommendation tainted the process as a whole since, after that, Taylor requested and received a full hearing before the Wellstar hearing panel and appellate review before the full board of trustees. The HCQIA does not require that hearing procedures satisfy a hospital's bylaws in order for immunity to apply. *Meyers v. Logan Mem. Hosp.*, 82 FSupp.2d 707, 715 (W.D. Ky. 2000) ("[T]here is no statutory requirement set forth in the HCQIA that a peer review proceeding must be conducted in accordance with a hospital's own specific internal bylaws or procedures.") (citations and punctuation omitted). In fact, the HCQIA "does not even necessarily require a pre-deprivation hearing." (Citations omitted.) *Northeast Ga. Med. Center v. Davenport*, 272 Ga. 173, 174-175 (527 SE2d 548) (2000). Rather, the statute requires only that hearing procedures be adequate and fair under the circumstances. Id.; 42 USC § 11112 (a) (3). Because the record supports the superior court's finding that Taylor failed to adduce evidence overcoming the presumption that he received adequate notice and fair process under the circumstances, the trial court did not err in concluding that the appellees were entitled to

HCQIA immunity. Consequently, the trial court did not err in granting summary judgment on this basis.

3. Taylor contends the superior court committed reversible error when it failed to consider whether the appellees' bylaws violations abrogated HCQIA immunity and constituted separate claims for relief. As we stated in Division 2, supra, the fact that bylaws violations may have occurred does not necessarily mean that Taylor was denied adequate notice and a hearing under the HCQIA. Further, HCQIA immunity extends to claims arising out of alleged bylaws violations that occur in the course of peer review. See *Patton v. St. Francis Hosp.*, 260 Ga. App. at 202. In that case, we affirmed a grant of summary judgment, finding the hospital immune under the HCQIA for alleged "violations of the hospital bylaws." Id. at 203.

4. Finally, Taylor contends the superior court erred in granting complete summary judgment because three of his claims are not subject to HCQIA immunity, specifically, injunctive relief, defamation resulting from a breach of contract, and punitive damages. However, pretermitting whether these claims remain viable under an HCQIA immunity analysis, we nevertheless affirm the grant of summary judgment as to those claims for other reasons which were raised and argued below. See *City of Gainesville v. Dodd*, 275 Ga. 834, 835 (573 SE2d 369) (2002) (Generally, a grant of summary judgment will be affirmed if it is "right for any reason.").

(a) Taylor contends he "seeks an injunction to reverse Appellees' revocation of his staff privileges" and to force the "Appellees to withdraw the false reports they made to the [National Practitioner] Data Bank." Taylor correctly argues that HCQIA immunity is limited to claims for monetary damages and does not extend to requests for equitable relief. *Patrick v. Floyd Med. Center*, 255 Ga. App. 435, 438 (2) (565 SE2d 491) (2002). However, nothing in the record shows that Taylor moved the superior court for an injunction or otherwise pursued injunctive relief as surviving his claim for monetary damages; consequently, his claims for injunctive relief were abandoned and the superior court properly entered summary judgment on them. Id.

Further, Georgia's peer review statute provides that no professional health care provider "shall be held, by reason of the performance of peer review activities, . . . to be civilly liable under any law unless he was motivated by malice toward any person affected by such activity." OCGA § 31-7-132 (a). Unlike the HCQIA, this Code section provides immunity from civil liability, not just from monetary damages.[4] Consequently, Georgia's peer review statute would cover

---

[4] Federal law does not completely preempt OCGA § 31-7-132 (a). The HCQIA only preempts

claims for equitable relief. We have reviewed the record de novo and in the light most favorable to Taylor; however, we can find no evidence from which a jury could reasonably infer that the appellees' decision to deny Taylor's application was motivated by malice. Therefore, the appellees are entitled to immunity from Taylor's equitable claims under OCGA § 31-7-132 (a).

(b) Taylor contends his contract and defamation claims "resulted from [appellees'] promise that if Taylor complied with [his psychiatrist's] treatment plan, he . . . could continue practicing at [Kennestone] and would not be reported to the [National Practitioner] Data Bank." First, assuming for the sake of argument that Taylor's contract claim is not a claim for damages arising from the peer review process which would be subject to the HCQIA, we nevertheless find this alleged oral agreement unenforceable. Federal law requires appellees to conduct periodic appraisals of their medical staff. 42 CFR § 482.22 (a) (1). Further, appellees were required to report Taylor's resignation to the data bank. 42 USC §§ 11133-11134. An agreement to violate these provisions would be unlawful and against the public policy to provide quality health care. Such contracts are unenforceable. OCGA §§ 13-8-1; 13-8-2; *Moore v. Dixon*, 264 Ga. 797, 799-800 (2) (452 SE2d 484) (1994). Further, Taylor's defamation claim fails because he failed to present evidence from which a jury could reasonably infer that the reports to the data bank were both false and malicious. *Jaillet v. Ga. Television Co.*, 238 Ga. App. 885, 888 (520 SE2d 721) (1999). Therefore, we conclude the superior court properly granted summary judgment on these claims.

(c) Taylor argues that his claim for punitive damages is not barred by the HCQIA because the appellees' actions were taken in "reckless or callous disregard of, or indifference to" Taylor's rights. Taylor has not demonstrated with reference to the record that the appellees acted with such disregard nor has he cited any case or statutory authority for the proposition that his claim for punitive damages is not subject to HCQIA immunity. As we have repeatedly stated, legal argument "is, at a minimum, a discussion of the appropriate law as applied to the relevant facts." *Dixon v. MARTA*, 242 Ga. App. 262, 266 (4) (529 SE2d 398) (2000). Because this claim of error

---

that Code section to the extent they conflict. *Patrick v. Floyd Med. Center*, 255 Ga. App. at 444 (3) (b). Because the HCQIA does not provide immunity against claims for equitable relief, we cannot say that it is in conflict with this aspect of OCGA § 31-7-132 (a). See generally *Aman v. State*, 261 Ga. 669, 670-671 (3) (409 SE2d 645) (1991) (the preemption doctrine may apply where there is direct conflict between state and federal regulation, where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, or where Congress has occupied the field in a given area so as to oust all state regulation).

is unsupported by facts, citation to the record, or legal argument, we deem it abandoned. Court of Appeals Rule 27 (c) (2), (3).

*Judgment affirmed. Blackburn, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 17, 2004 —
RECONSIDERATION DENIED MARCH 3, 2004.

*Arnall, Golden & Gregory, Charles L. Gregory, Ida P. Dorvee, Timothy A. Baxter*, for appellant.

*Brock, Clay, Calhoun, Wilson & Rogers, Charles C. Clay, Nicholas P. Panayotopoulos, Parker, Hudson, Rainer & Dobbs, G. Wayne Hillis, Jr., David L. Fenstermacher*, for appellees.