**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 7, 2017**

# In the Court of Appeals of Georgia

A16A1988. AMERICAN ACAD. OF GEN. PHYSICIANS, INC. et al. v. LAPLANTE.

BETHEL, Judge.

American Academy of General Physicians, Inc. (the "Academy"), American College of General Medicine, Inc. (the "College"), and American Board of General Practice, Inc. (the "Board"), (collectively, the "Organizations") appeal from an order enforcing the Settlement Agreement (the "Agreement") with Sharron Lee LaPlante ("LaPlante"). The Organizations argue the trial court erred in enforcing the Agreement because the Organizations' agents exceeded their authority, an essential provision of the Agreement is void as against public policy, and there was no meeting of the minds between parties. For the reasons explained below, we affirm because there existed a sufficient meeting of the minds to validate and enforce the Agreement.

On appeal from a trial court's order to enforce a settlement agreement, this Court applies a de novo standard of review because

> the issues raised are analogous to those in a motion for summary judgment, [and] in order to succeed on a motion to enforce a settlement agreement, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the Appellant's case. Thus, we view the evidence in a light most favorable to the nonmoving party[.][1]

So viewed, the evidence shows that The Organizations filed a complaint alleging libel, slander, and other claims against LaPlante on April 13, 2012. After contentious discovery disputes, the case was ordered to mediation in October 2013. In January 2014, LaPlante moved for summary judgment on all claims, which the trial court granted in part and denied in part.[2] Mediation occurred on August 28, 2015, at

---

[1] *Johnson v. DeKalb Cty.,* 314 Ga. App. 790, 791 (726 SE2d 102) (2012) (citation and punctuation omitted).

[2] Summary judgment was granted in LaPlante's favor as to the claims for service mark infringement, deceptive trade practices, and breach of contract. Summary judgment was denied as to the slander and libel claims.

which Drs. Jose Garcia[3] ("Dr. Garcia") and George Covert[4] ("Dr. Covert") and attorney Robert Dyer (collectively, the "Agents") appeared on behalf of the Organizations; LaPlante, her attorney, and a mediator were also present. The parties reached an agreement whereby LaPlante agreed to remove her websites[5] from the Internet, not publish any future websites using the domain names identified in the Agreement, and not publish any information on any website in the future relating to the Organizations. In return, the Organizations agreed to remove their websites[6] from the Internet and not publish a website in the future using the domain names identified in the Agreement. The Agreement also provided for a general release by each party from "any and all actions, causes of action, suits, debts, sums of money, accounts, obligation, demands and damages, of every name, kind and nature whatsoever, past

---

[3] Dr. Garcia's official title at the time he signed the Agreement was Chief Financial Officer for the Board and the College.

[4] Dr. Covert's official title at the time he signed the Agreement was President and CEO of the Academy.

[5] LaPlante owned the websites with the domain names: www.aagpscam.com, www.acgmalert.com, www.abgpalert.com, and www.aagpalert.com. The Organizations sued LaPlante alleging in part that LaPlante used those websites to post defamatory material about the Organizations and their members.

[6] The Organizations owned the websites with the domain names: www.abgp.org, www.aapg.org, and www.acgm.org.

3

or present, whether known or unknown, whether at law or in equity, arising or existing on account of any action or failure to act on or before the beginning of time to the date of this Agreement."

The Agreement was read into the record by the mediator in the presence of the trial judge, the parties, and their counsel, and after a short discussion in open court, was signed by the parties. About a month later, LaPlante moved to enforce the Agreement, alleging the Organizations failed to comply with their responsibilities. On February 10, 2016, the trial court heard arguments on the motion and later issued an order finding paragraphs two and four valid and enforceable. The trial court found that there existed a sufficient meeting of the minds to validate and enforce paragraph two of the Agreement and ordered the Organizations to take down their websites. . The trial court further found paragraph four to be valid and enforceable as the parties clearly intended release one another of any and all claims which would include issues regarding professional conduct. This appeal followed.

1. The Organizations argue the trial court erred in enforcing the Agreement because the Agents exceeded their authority. The Organizations conceded in their brief that the Agents were sent by the Organizations to attend court-ordered mediation with authority to "settle the case" and contract on behalf of the Organizations. But the

4

Organizations argue that the Agents exceeded their authority if the intent of the Agreement was to deny the Organizations a presence on the Internet. At the hearing on LaPlante's motion to enforce, the Organizations reiterated that the issue of whether the Agents exceeded their authority was contingent upon whether the terms of the Agreement prohibited the Organizations from having any presence whatsoever on the Internet. However, on appeal, the Organizations now argue that the Agreement itself was "extraordinary," "entirely repugnant" and "so unreasonable" because the Agents agreed to shut down the Organizations' own websites without sufficient reason, and that the Agents impliedly exceeded their authority by signing it. This argument was not raised in the court below.

> It is well settled that issues presented for the first time on appeal furnish nothing for us to review[,] for this is a court for correction of errors of law committed by the trial court where proper exception is taken. Nor may [a plaintiff] alter the course of its arguments mid-stream, raising issues on appeal that were not raised before the trial court.[7]

---

[7] *Pinnacle Prop. V, LLC v. Mainline Supply of Atlanta, LLC*, 319 Ga. App. 94, 100, (735 SE2d 166) (2012) (citation and punctuation omitted). *See also Pfeiffer v. Ga. Dept. of Transp.,* 275 Ga. 827, 828-29 (2) (573 S.E.2d 389) (2002) (Court of Appeals properly refused to review argument made in opposition to summary judgment that was raised for the first time on appeal)*; CPD Plastering, Inc. v. Miller,* 284 Ga. App. 172, 174(1) (643 SE2d 392) (2007) (party could not abandon an issue in the trial court and on appeal raise questions or issues not raised below); and

Here, the trial court found that the Agreement did not prohibit the Organizations from having any web presence, but only prohibited the Organizations from using the aforementioned domain names and websites. The Organizations now seek to alter their argument on appeal by removing the conditions upon which the Agents exceeded their authority. This cannot be done on appeal. Accordingly, this enumeration of error lacks merit.

But even if the Organization had raised this argument below, it would still fail because "[i]n Georgia, settlement agreements are highly favored under the law and will be upheld whenever possible" and the law cannot concern itself with the Organizations lingering discontent over a bargain struck on the record and with the benefit of counsel. *Sanders v. Graves*, 297 Ga. App. 779, 779 (678 SE2d 220) (2009) (citations omitted). The trial court did not err when it enforced the Agreement.

2. The Organizations next argue that an essential element of the Agreement contravenes federal law and is void as against public policy. Specifically, the Organizations contend that the general release language in paragraph four of the

_____

*Venture Design v. Original Appalachian Artworks, Inc.,* 197 Ga. App. 432, 434(3) (398 SE2d 781) (1990) (contractor could not argue for the first time on appeal that an indemnity agreement was contrary to public policy under applicable statute and was therefore invalid).

6

Agreement is unenforceable because it would illegally require the Organizations to avoid compliance with federal law which requires healthcare entities to report findings from their peer review actions.[8] The trial court found that LaPlante had not submitted herself to the authority of the Organizations[9] because her membership with the Organizations expired in 2010, and the Organizations did not have a right to engage in a review of LaPlante's professional conduct. We agree with the trial court.

The evidence shows that LaPlante was a member of the Organizations from 2005 until approximately 2010 when she stopped paying membership dues. The trial court found that LaPlante had not been a member for a number of years and should have been dropped from the Organizations' membership rolls. However, the Organizations argue LaPlante is still a member because she never formally resigned

---

[8] Health Care Quality Improvement Act of 1986, 42 USC § 11133(a)(1)(c)(i)(3) ("HCQIA") provides in part that "[e]ach health care entity which. . . is a professional society [and] takes a professional review action which adversely affects the membership of a physician in the society, shall report to the Board of Medical Examiners. . . the name of the physician or practitioner involved, a description of the acts or omissions or other reasons for the action or, if known, for the surrender. . . as the Secretary [of Health and Human Services] deems appropriate."

[9] The Academy is a "health care entity" under HCQIA. For our purposes, a health care entity means a professional society of health care practitioners that engage in professional review activity through a formal peer review process of its members. *See* 45 CFR § 60.3.

her membership. This argument does not comport with the terms of the Organizations' membership agreement which requires members to pay annual dues in order to maintain their membership. Those same terms also note that the peer review of members is limited to the time in which they are members. In this case, the peer review process was not initiated until February 2016, nearly six years after LaPlante's membership expired.[10]

> It is well established under Georgia law that
>
> [t]he cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced. . . . Further, the construction which will uphold a contract in whole and in every part is to be preferred, and . . . no construction is required or even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation. It is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless.

*Freund v. Warren*, 320 Ga. App. 765, 768–69 (740 SE2d 727) (2013) (citation and punctuation omitted).

---

[10] The documents related to the peer review action were not included with the record on appeal.

Here, the trial court found that, per the terms of the Agreement, the parties clearly intended to have no further dealings with one another, which would include issues regarding professional conduct. Nothing in the record suggests LaPlante is still a member of the Organizations and therefore subject to their professional review authority. The Organizations did not appeal the trial court's ruling that LaPlante is no longer a member, and as such, we agree that the Organizations are under no obligation under federal law or have authority under the terms of their membership agreement to review and report on the professional conduct of LaPlante.[11]

3. Finally, the Organizations argue that the Agreement is unenforceable because there was no meeting of the minds. In the trial court , the Organizations argued it was unclear from the language in the Agreement and subsequent correspondence with LaPlante whether the Organizations were barred from ever having any presence on the Internet. The Organizations concede that the Agreement makes clear that the parties could not use the domain names or websites defined

---

[11] The Organizations argue this Court's holding *Taylor v. Kennestone Hosp., Inc.* applies because any contract to avoid the peer review reporting requirements of HCQIA were void as against public policy. 266 Ga. App. 14, 22 (4) (b) (596 SE2d 179) (2004). The holding in *Taylor* is distinguished by the fact that the doctor had submitted himself to the authority of the hospital and was therefore subject to the peer review. Further, the agreement between the hospital and the doctor on its face violated the reporting requirements of the completed peer review. *Id.*

9

therein. But the Organizations contend that the Agreement was interpreted by LaPlante to mean the Organizations are barred from publishing "any website on any domain name." We disagree.

"[A]n agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject-matter, and in the same sense. *Cox Broad. Corp. v. Nat'l Collegiate Athletic Ass'n*, 250 Ga. 391, 395 (297 SE2d 733) (1982) (citations omitted). "In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent." *Id.* "When parties to a contract . . . know that they have different intents with respect to certain language before they enter into the contract, there can be no meeting of the minds upon the same subject matter and in the same sense and no agreement on that issue." *Id.*

In this case, after the parties reached a settlement in mediation, the terms of the Agreement were read into the record before the trial court. After the terms were read, the following discussion occurred between the trial court and counsel for the parties:

10

COURT: Okay. May I ask a question? I know it's probably irregular for – in a mediation, but in the context of removing websites, is the – without defining what that means, I guess it would be important for me to know that the parties' contemplation is that the websites would no longer be active. Meaning that someone could not add content to those websites and all parties understand that, even after these websites are removed, there may be cached shadows of these websites forever. MEDIATOR: And I think I can state the understanding of the parties, Your Honor, to – to be corrected by Counsel, it's their intent to take these sites down – COURT: (Interposing) So they're not active? MEDIATOR: – not active. Completely take them down and they're going to have to work with the domain providers to – nobody can provide any new content, reactivate these websites, and that's why we identified both the domain names that access the site and the sites themselves. Is that an accurate statement? LAPLANTE'S COUNSEL: That's correct. ORGANIZATIONS' COUNSEL: That's our understanding as well, Your Honor.

Nowhere in the record does LaPlante assert that the Organizations are barred from having a presence on the Internet,[12] and there is nowhere in the Agreement that

---

[12] The Organizations references LaPlante's November 2015 letter where LaPlante restates the terms of the Agreement requiring the Organizations to remove their domain names and websites from the Internet. The Organizations' attempt to interpret this letter to mean LaPlante implied the Organizations were barred from having a presence on the Internet is a fallacy. The Agreement specifically defines the websites and domain names subject to its terms, which is what LaPlante referenced in her letter.

11

prohibits either party from ever having a presence on the Internet. The Agents, one of whom was an attorney for the Organizations, had three opportunities (the initial drafting of the Agreement, in open court when the Agreement was read into the record, and after the trial court's further inquiry) to raise any objections or ask clarifying questions before signing the Agreement if they suspected LaPlante's intent differed from theirs. The trial court found the language of paragraph two of the Agreement was specific to the domain names and particular websites identified therein, and that it did not say the parties could not have a presence on the Internet. We agree.

Further, the Organizations argue for the first time on appeal that under the objective theory standard in *Cox,* there was no meeting of the minds because LaPlante could not reasonably believe the Organizations would authorize the Agents to abandon their websites and domain names. But the Organizations argued in the trial court below that the meeting of the minds did not occur because LaPlante's intent to prohibit the Organizations from having any Internet presence whatsoever was not contemplated by the parties at the time the Agreement was signed. "Routinely, this Court refuses to review issues not raised in the trial court. To consider the case on a completely different basis from that presented below would be contrary to the line of

12

cases holding, [plaintiffs] must stand or fall upon the position taken in the trial court. Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court."[13] For this reason, we will not consider the Organizations' objective theory argument raised for the first time on appeal.

4. LaPlante seeks the imposition of $10,000 against the Organizations and their counsel under Court of Appeals Rule 15 (b).[14] Although we are not able to discern any reasonable ground upon which the Organizations might have anticipated the reversal of the trial court's judgment, based on the record we cannot say that their appeal was totally frivolous or solely to delay the enforcement of the Agreement. *Blomberg v. Cox Enterprises, Inc.,* 228 Ga. App. 178, 180 (2) (491 SE2d 430) (1997) (citation omitted). Therefore, we decline to grant LaPlante's motion for sanctions.

*Judgment Affirmed. Dillard, P. J., and Reese, J., concur.*

---

[13] *See Walls v. Sumter Reg'l Hosp., Inc.,* 292 Ga. App. 865, 867-68 (1) (666 SE2d 66) (2008)(citations omitted).

[14] During the pendency of this appeal, Court of Appeals Rule 15 (b) governing sanctions for frivolous appeals was replaced by Court of Appeals Rule 7 (e) (2).

13