**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 29, 2022**

# In the Court of Appeals of Georgia

A22A0581. PFERRMAN et al. v. BPS OF TIFTON, INC.

HODGES, Judge.

This case involves interpretation of the High-voltage Safety Act, OCGA § 46-3-30 et seq. ("HVSA"). John A. Pferrman was severely injured after being electrocuted while replacing a billboard sign. He seeks to hold the owner of the billboard, BPS of Tifton, Inc., strictly liable for his injuries under the HVSA due to BPS' alleged failure to provide appropriate notice under the law that Pferrman would be working in the vicinity of high-voltage power lines. BPS moved for summary judgment contending that the HVSA did not apply to it, which the trial court granted. Pferrman also filed a motion for partial summary judgment on the application of the

HVSA to this case, which the trial court denied. Pferrman appeals; however, we find no error and affirm.[1]

> Summary judgment is appropriate if the pleadings and the undisputed evidence show that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant or denial of summary judgment, the appellate courts conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party.

*Bank of N. Ga. v. Windermere Dev.*, 316 Ga. App. 33, 34 (728 SE2d 714) (2012).

So viewed, the evidence shows that Pferrman was an employee of a company called Ty Ty Signs, which had been hired by BPS to change out a sign on a billboard owned by BPS. Ty Ty was an independent contractor of BPS and was hired to work on BPS' billboards on a job-by-job basis. Here, BPS hired Ty Ty to change a billboard sign in Warwick, Georgia, and to do so, it provided Ty Ty with a vinyl replacement sign, rods, and straps. No specific day was stated by BPS for Ty Ty to

---

[1] Pferrman's Workers' Compensation carrier, American Interstate Insurance Company, intervened in the lawsuit in the trial court and was included in the Notice of Appeal. It is listed as an appellant in this case; however, it failed to file a brief in this appeal to support its position.

2

perform the work, and no one at Ty Ty notified BPS of the day it went to the Warwick billboard.

On April 29, 2019, Pferrman went to the billboard to change the sign. No one from BPS was present with him at the billboard. He used a lift to raise himself into the air to access the billboard. During his work on the sign, he was holding a metal rod in his hands and inching it up to remove the rod from the previously installed vinyl billboard sign. He was aware that the billboard was close to a power line and was attempting to take precautions. However, as Pferrman was taking the pole out of the old sign, he was electrocuted and severely injured.

Pferrman sued BPS on several grounds, including seeking to impose strict liability against BPS pursuant to the HVSA.[2] Pferrman moved for summary judgment as to his HVSA claim, and BPS cross-moved for summary judgment as to all of Pferrman's claims. Following a hearing, the trial court denied Pferrman's partial summary judgment motion and granted BPS' motion. This appeal followed.

---

[2] Pferrman also brought claims of negligence, imputed liability, negligent hiring, training, and supervision, and punitive damages. He does not pursue these other claims in this appeal.

1. Pferrman contends that the trial court erred in granting summary judgment to BPS by finding that it did not perform "work" as defined by the HVSA. We find no error.

> The General Assembly passed the HVSA with the codified purpose to

> prevent injury to persons and property and interruptions of utility service resulting from accidental or inadvertent contact with high-voltage electric lines by providing that no work shall be done in the vicinity of such lines unless and until the owner or operator thereof has been notified of such work and has taken one of the safety measures prescribed in this part.

OCGA § 46-3-31.

> To further that goal, the law provides that

> [n]o person, firm, or corporation shall commence any work as defined in paragraph (6) of Code Section 46-3-32 if at any time any person or any item specified in paragraph (6) of Code Section 46-3-32 may be brought within ten feet of any high-voltage line unless and until . . . [t]he person responsible for the work has given the notice required by Code Section 46-3-34[.]

OCGA § 46-3-33 (1). Paragraph 6 of OCGA § 46-3-32 defines "work" as

> the physical act of performing or preparing to perform any activity under, over, by, or near high-voltage lines, including, but not limited to,

4

the operation, erection, handling, storage, or transportation of any tools, machinery, ladders, antennas, equipment, supplies, materials, or apparatus or the moving of any house or other structure whenever such activity is done by a person or entity in pursuit of his trade or business.

Paragraph 3 of that code section relevantly defines "[p]erson responsible for the work" as "the person actually doing the work as well as any person, firm, or corporation who employs and carries on his payroll any person actually doing the work or who employs a subcontractor who actually does the work[.]" OCGA § 46-3-32 (3). As to the notice required, "the person responsible for such work shall give notice to the utilities protection center[3] during its regular business hours at least 72 hours, excluding weekends and holidays, prior to commencing such work . . . ." OCGA § 46-3-34 (b).

The HVSA provides that

[a]ny person responsible for the work who violates any of the provisions of this part shall be guilty of a misdemeanor and, upon conviction thereof, shall be liable for a fine of $1,000.00 for a first offense and $3,000.00 for a second or subsequent offense. [It also provides that] [a]ny person responsible for the work who violates the requirements of

---

[3] The HVSA defines the "utilities protection center" as "the corporation or other organization formed by utilities which receives advance notifications regarding work and distributes such notifications to its utility members." OCGA § 46-3-32 (4).

5

Code Section 46-3-33 and whose subsequent activities within the vicinity of high-voltage lines result in damage to utility facilities or result in injury or damage to person or property shall be strictly liable for said injury or damage. . . .

OCGA § 46-3-40 (a) - (b).

Here, it is undisputed that no one provided notice to the utilities protection center prior to attempting to remove the old billboard sign and install a new one. It is also undisputed that Pferrman was performing work, as defined by the HVSA, because he was performing an activity "under, over, by, or near high-voltage lines."[4] The relevant question for this appeal, however, is whether *BPS* was performing work, as defined by the HVSA, as that is a prerequisite to imposing strict liability under the HVSA. Georgia law has rarely had the opportunity to interpret the definition of "work" under the HVSA, and no case has addressed the precise question presented here.

It is undisputed that BPS was not present at the billboard, so it was not itself performing an activity "under, over, by, or near high-voltage lines" at the time of Pferrman's injury. Pferrman argues, however, that the HVSA defines "'work' broadly,

_____

[4] We need not decide the impact of Pferrman's own violation of the HVSA on his cause of action in order to decide this appeal, so we will not do so.

to include not just the physical act of performing an activity near high-voltage lines, but also any act of preparing to perform an activity that ultimately occurs near high-voltage lines." Accordingly, Pferrman contends that BPS' storage of the vinyl sign Pferrman was supposed to hang, as well as its provision of metal rods and straps, is sufficient to constitute "work" under the HVSA even though those activities occurred miles away from the high-voltage lines at issue. We cannot agree with this interpretation.

> When this Court interprets any statute, we necessarily begin our analysis with familiar and binding canons of construction. When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

(Citations and punctuation omitted.) *Moosa Co., LLC v. Ga. Dept. of Revenue*, 353 Ga. App. 429, 430-431 (838 SE2d 108) (2020).

The HVSA, which provides for strict liability, is in derogation of the common law. See *Gropper v. STO Corp.*, 250 Ga. App. 820, 822 (1) (552 SE2d 118) (2001).

7

> [I]t has always been a rule of construction of statutes that those in derogation of the common law, that is those which give rights not had under the common law, must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute. The legislature is presumed to act with knowledge of this rule of construction, and with that body only lies the right and privilege to grant rights not given under the common law and to extend and broaden any rights so granted. Such is not the function of the courts.

(Citation and punctuation omitted.) *Delta Airlines v. Townsend*, 279 Ga. 511, 512 (1) (614 SE2d 745) (2005); see also *Heard v. Neighbor Newspapers*, 259 Ga. 458, 459 (5) (b) (383 SE2d 553) (1989) ("Statutes in derogation of the common law are construed strictly.").

In addition to imposing strict civil liability, the HVSA imposes criminal liability for violation of its mandates. OCGA § 46-3-40 (a) - (b). "We have no general rule of strict liability in Georgia. Our statutes which have attributes of strict liability are strictly construed[.]" (Citation omitted.) *McNamee v. A.J.W.*, 238 Ga. App. 534, 539 (4) (519 SE2d 298) (1999). Moreover, statutes "must be construed strictly against criminal liability and, if [a statute] is susceptible to more than one reasonable interpretation, the interpretation most favorable to the party facing criminal liability must be adopted. This rule applies even though a criminal statute is being construed

8

in a civil context." (Citations omitted.) *Glinton v. And R, Inc.*, 271 Ga. 864, 865 (524 SE2d 481) (1999).

Here, strictly construing the HVSA, as we must, forecloses Pferrman's proposed broad interpretation. Pferrman's reading of the statute would cast a wide net in defining activities deemed "work" and it would thereby expand the number of people and companies subjected to strict civil as well as criminal liability. Here, it would include activities performed both physically and temporally distant from high-voltage lines. Although Pferrman contends that the statute encompasses performing and preparing to perform activities which will *ultimately* occur "under, over, by, or near high-voltage lines," that is not what the language of the statute provides. Whatever policy objectives or alleged societal good may be forwarded by reading the statute as Pferrman proposes, our canons of statutory construction do not permit us to read this statute in such a way.

Further buttressing our interpretation of "work" under the HVSA as requiring activities that actually occur near high-voltage lines is the statutory language in the HVSA which provides for the imposition of strict liability. OCGA § 46-3-40 (b) provides that "[a]ny person responsible for the work who violates the requirements of Code Section 46-3-33 and whose *subsequent activities within the vicinity of*

9

*high-voltage lines* result in damage to utility facilities or result in injury or damage to person or property shall be strictly liable for said injury or damage." (emphasis supplied). Indeed, because it is undisputed that BPS engaged in no activities "within the vicinity of high-voltage lines", OCGA § 46-3-33 (b) provides an independent basis for the denial of Pferrman's claims. Accordingly, the trial court did not err in granting BPS' motion for summary judgment and denying Pferrman's partial motion for summary judgment.

2. Pferrrman also contends that the trial court erred in finding that Ty Ty was not BPS' "subcontractor" under the statute. This argument has been waived by Pferrman.

It is axiomatic that

> issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken. Nor may a plaintiff alter the course of [his] arguments mid-stream, raising issues on appeal that were not raised before the trial court.

(Citation and punctuation omitted.) *American Academy of Gen. Physicians, Inc. v. LaPlante*, 340 Ga. App. 527, 529 (1) (798 SE2d 64) (2017). Here, Pferrman did not raise an argument below that Ty Ty was BPS' "subcontractor" so as to make BPS a

"person responsible for the work" under the HVSA. He is correct that, American Interstate Insurance Company, the Worker's Compensation carrier, did make such an argument, but he has pointed to nowhere in the record where he joined in or adopted that argument before the trial court.[5] American Interstate has not filed a brief advancing its position on appeal. It is not enough that the legal argument was before the trial court from another party, Pferrman was required to advance the argument himself to preserve the issue for appeal. See *Mission Health of Georgia, LLC v. Bagnuolo*, 339 Ga. App. 23, 24 (793 SE2d 98) (2016) (one co-defendant was unable to rely on another co-defendant's motion to dismiss for failure to file an expert affidavit even though the legal issue involved was identical for both co-defendants); *Frieson v. S. Fulton Med. Ctr.*, 255 Ga. App. 217, 218 (3) - (4) (564 SE2d 821) (2002) (reversing dismissal of complaint for failure to file an expert affidavit as to the co-defendant who did not file a motion to dismiss on that ground and affirming it as to the co-defendant who did file a motion to dismiss on that ground). Accordingly, this argument was waived and provides nothing for our review.

---

[5] "[T]his Court will not cull the record . . . on behalf of a party. Accordingly, if we have missed something in the record or misconstrued an argument, the responsibility rests with counsel." (Citation omitted.) *Sloans v. State*, ____ Ga. App. ____ (861 SE2d 130, 133) (2021).

11

*Judgment affirmed. Barnes, P. J., and Brown, J., concur.*